**Robert Allen GATTIS, Defendant Below–Appellant,**

v.

**STATE of Delaware, Plaintiff Below–Appellee.**

**No. 628, 2005.**

Supreme Court of Delaware.

Submitted: June 27, 2008.
Decided: July 24, 2008.

---

Kevin J. O'Connell, Esquire, Office of the Public Defender, Wilmington, DE, for appellant.

Loren C. Meyers, Esquire, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Defendant–Appellant Robert A. Gattis was convicted by a Superior Court jury in 1992 of Murder First Degree and other charges relating to the shooting death of Shirley Y. Slay. After a penalty hearing, the jury recommended the death penalty, which the Superior Court imposed. The convictions and sentence were affirmed on direct appeal.[1] Gattis's first motion for postconviction relief was denied by the Superior Court and this Court affirmed.[2] Gattis filed a second motion for postconviction relief in the Superior Court, and a motion for the assigned judge to disqualify herself. The Superior Court denied both motions.

In this appeal, Gattis raises six claims that the Superior Court reversibly erred: (1) the current trial judge improperly denied his motion to disqualify;[3] (2) the Superior Court abused its discretion in denying his request for an extension of the time period for filing and of the page limitations for his postconviction motion brief; (3) the Superior Court improperly denied reconsideration of his ineffective assistance of counsel claim; (4) Delaware's capital sentencing scheme is unconstitutional because the presiding trial judge applied a preponderance of the evidence standard rather than a beyond a reasonable doubt standard in determining the finding of fact that the aggravating circumstances outweighed those offered in mitigation; (5) the presiding trial judge made impermissible extra-judicial contact with several of the trial jurors before imposing sentence; and (6) the presiding trial judge gave undue weight to the jury's non-unanimous vote favoring the death sentence. On the first

1. *Gattis v. State*, 637 A.2d 808 (Del.1994), *cert. denied*, 513 U.S. 843, 115 S.Ct. 132, 130 L.Ed.2d 75 (1994).

2. *Gattis v. State*, 697 A.2d 1174 (Del.1997), *cert. denied*, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 130 (1998).

3. When the judge who presided over Gattis's trial, sentencing, and his first postconviction motion retired, another Superior Court judge was assigned to Gattis's case. For clarity, references to the initial trial judge will be referred to as the "presiding trial judge" and references to the current trial judge in these proceedings will be referred to as "the Superior Court," except with regard to Gattis's motion to disqualify, which will refer to her as the "current trial judge."

issue, we remanded this matter for the current trial judge to explain her rationale for summarily denying Gattis's motion to disqualify pursuant to the two-part test required under *Los v. Los*[4] and its progeny. The current trial judge has filed her written report. After considering the expanded record, we find no merit to Gattis's appeal. Accordingly, we affirm.

## I. Facts

Gattis was charged and convicted of Murder First Degree, Burglary First Degree, Possession of a Deadly Weapon by a Person Prohibited, and two counts of Possession of a Deadly Weapon During the Commission of a Felony. These offenses all related to the May 9, 1990 shooting death of his girlfriend, Shirley Y. Slay.[5] During the penalty phase of his trial, the jury recommended by a vote of ten to two that the aggravating circumstances outweighed the mitigating circumstances. The presiding trial judge, after making his independent determination, imposed the death sentence. On Gattis's automatic direct appeal, his convictions and sentence were affirmed.[6] Gattis filed a motion for

postconviction relief, and this Court affirmed the Superior Court's decision to deny his motion.[7] Gattis next applied for federal habeas relief in the United States District Court of Delaware,[8] and the United States Court of Appeals for the Third Circuit affirmed the District Court's denial of that petition.[9]

Gattis filed a second state motion for postconviction relief in April 2002. The Superior Court stayed proceedings in the case pending the United States Supreme Court's decision in *Ring v. Arizona.*[10] Gattis twice amended his postconviction motion. His second amendment alleged that the presiding trial judge had improper contact with jurors after Gattis's trial but prior to sentencing. Given that allegation, the Superior Court expanded the record and conducted evidentiary hearings on the matter. Following briefing, the Superior Court denied the postconviction motion. This appeal followed.

## II. Discussion

This Court reviews the Superior Court's decision on an application for postconvic-

---

**4.** 595 A.2d 381 (Del.1991).

**5.** A full exposition of the facts relating to Slay's murder and Gattis's defense are provided in this Court's Opinion upon Gattis's direct appeal. *See Gattis,* 637 A.2d at 810–11. This Opinion contains only those facts that are pertinent to our resolution of the issues presented in this appeal.

**6.** *Gattis v. State,* 637 A.2d 808 (Del.1994), *cert. denied,* 513 U.S. 843, 115 S.Ct. 132, 130 L.Ed.2d 75 (1994).

**7.** *Gattis v. State,* 697 A.2d 1174 (Del.1997), *cert. denied,* 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 130 (1998).

**8.** *Gattis v. Snyder,* 46 F.Supp.2d 344 (D.Del. 1999), *aff'd,* 278 F.3d 222 (3d Cir.2002).

**9.** *Gattis v. Snyder,* 278 F.3d 222 (3d Cir.2002), *cert. denied,* 537 U.S. 1049, 123 S.Ct. 660, 154

L.Ed.2d 524 (2002). As framed by the Third Circuit, the District Court addressed and rejected five claims on the merits: "(1) that trial delays denied Gattis the right to a speedy trial; (2) that his Fourteen Amendment rights were violated by an improper peremptory challenge; (3) that trial counsel were ineffective; (4) that the sentencing court violated Gattis' constitutional rights by sentencing him under Delaware's revised death penalty even though the crime of which he was convicted occurred prior to the statute's enactment; and (5) that the Delaware Supreme Court denied him due process when it affirmed his conviction and death sentence on collateral review based on a different factual basis from that argued to the jury." *Id.* at 225.

**10.** 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

tion relief for abuse of discretion.[11] Questions of law are reviewed *de novo.*[12]

## A. Denial of Gattis's Motion to Disqualify

Gattis first argues that the current trial judge abused her discretion in denying his motion to disqualify her from considering of his second motion for postconviction relief. The basis for the motion was the alleged personal bias of the current trial judge against Gattis's defense attorney.[13] A two-part test is required for a recusal motion under *Los v. Los.*[14] In *Jones v. State,*[15] we reiterated the two-step analysis in which a trial judge must engage to determine whether disqualification is appropriate, as well as the appropriate standard of review:

> The first step requires the judge to be subjectively satisfied that she can proceed to hear the cause free of bias or prejudice concerning that party. Even if the judge is satisfied that she can proceed to hear the matter free of bias or prejudice, the second step requires

the judge to examine objectively whether the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality. On appeal, we review the trial judge's analysis of the subjective test for abuse of discretion. Because a claim of appearance of impropriety implicates a view of how others perceive the conduct of the trial judge, we review the merits of the objective test *de novo.*[16]

On appeal of the judge's recusal decision, "the reviewing court must be satisfied that the trial judge engaged in the subjective test and will review the merits of the objective test."[17] Because the current trial judge summarily denied the motion to disqualify without articulating her analysis of the subjective or objective portions of the *Los* test, we remanded this matter for the judge to provide a written report on her rationale. In a seventeen-page report to this Court, she detailed the reasons why she denied the motion to disqualify. We find no abuse of discretion with her expla-

11. *Dawson v. State,* 673 A.2d 1186, 1190 (Del. 1996); *Outten v. State,* 720 A.2d 547, 551 (Del.1998).

12. *Dawson,* 673 A.2d at 1190; *Outten,* 720 A.2d at 551.

13. Because the same defense attorney had raised the identical motion against the same trial judge in a different case, this Court stayed action on this appeal pending that decision. In that case, we found no error in the trial judge's denial of Jones's motion to disqualify. *See Jones v. State,* 940 A.2d 1, 17–19 (Del.2007).

14. 595 A.2d 381 (Del.1991).

15. 940 A.2d 1 (Del.2007).

16. *Id.* at 18 (citations and internal quotation marks omitted).

17. *Watson v. State,* 934 A.2d 901, 905 (Del. 2007) (quoting *Los,* 595 A.2d at 385). *See*

*also Beck v. Beck,* 766 A.2d 482, 484 (Del. 2001) ("As a general rule, the trial judge must first have an opportunity to address allegations of bias before this Court will intervene."); *Stevenson v. State,* 782 A.2d 249, 255 (Del.2001) ("On appeal from a judge's recusal decision, the appellate court must be satisfied that the trial judge engaged in the subjective test but the appellate court 'will review the merits of the objective test.' "). *See generally Jackson v. State,* 684 A.2d 745, 753 (Del.1996) ("A conscientious application of the subjective test by a judge faced with a recusal motion based on exposure to inadmissible evidence in the same proceeding will, in most cases, provide sufficient protection from bias."). While Canon 3C of the Delaware Code of Judicial Conduct sets forth certain situations prompting disqualification, the list is not exhaustive. *Jones,* 940 A.2d at 18; *Stevenson,* 782 A.2d at 255.

nation of the subjective prong.[18] Although we also agree with the current trial judge's assessment of the objective prong,[19] we provide further explanation of the objective portion of the test given the nature of the arguments Gattis has made on appeal.

Under the objective portion of the test, for the judge to be disqualified, "the alleged bias or prejudice of the judge 'must stem from an *extrajudicial source* and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' "[20] Gattis argues that the current trial judge's attitude toward defense counsel, as evidenced by the *Jones* opinion, is an "extrajudicial source" of bias sufficient to meet this prong. To support his argument, Gattis cites two decisions from the United States Court of Appeals for the Seventh and Tenth Circuits,[21] and represents that those decisions require disqualification where a judge's attitude toward a particu-

**18.** *See Gattis v. State*, No. 628, 2005 Report (May 21, 2008), at 7–8:

> Turning first to the subjective prong, the Court can unequivocally state that it has no feelings of bias, prejudice, or ill-will against this defendant personally, and that nothing the defendant or his attorney has done during the course of this or any other litigation gives rise to any such feelings. The motion in this case was filed long after the sentence of death had been imposed by a different Judge, and the Court was required to do nothing more than conduct a straightforward and careful analysis of the law and the trial transcripts. The Court's perspective could not have been more objective. The reasons for the Court's objectivity are obvious. This Judge had no involvement whatsoever in any of the pretrial rulings or proceedings, or in the jury selection process. It did not preside over the trial or make a single one of the rulings that are challenged in this Rule 61 Motion. Prior to reading the motion, this Judge knew nothing of the facts of this case and had never heard or observed any of the witnesses. More significantly, this Judge was not the Judge who imposed the death sentence on Mr. Gattis. All of those crucial rulings that are challenged by defendant in this motion were made by now retired [presiding trial judge]. As a result, this Judge has absolutely no vested interest in upholding those decisions and no personal stake whatsoever in whether the [presiding] trial judge's rulings were affirmed. In a very real sense, my function in deciding this motion was analogous to that of an appellate judge since virtually all of the information necessary to rule on the postconviction issues had to be gleaned almost exclusively from the record. Indeed, this Judge did not even lay eyes on the defendant until more than ten years after all of the rulings about which Gattis complains had been decided and affirmed on appeal, and long after his first Rule 61 Motion for Postconviction Relief had been denied by the [presiding] trial judge.

> *See also id.* at 10 ("In summary then, since defendant has not identified any specific evidence of actual bias or prejudice, and since the Court is absolutely satisfied that it was and is free of bias or prejudice, and that it was fair and neutral, the first prong of the *Los* analysis does not require disqualification.").

**19.** *See, e.g., id.* at 11 ("In the eyes and minds of the reasonable objective observer, there are simply no facts or circumstances that demonstrate an appearance of bias that would lead such a reasonable and objective observer to doubt the Court's impartiality."); *id.* at 16 ("The record is devoid of any evidence that this Judge cannot be fair and impartial in a death penalty case.").

**20.** *Los*, 595 A.2d at 384 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)) (emphasis added). *See also Beck*, 766 A.2d at 485 ("Moreover, the alleged bias or prejudice must be based on information that the trial judge acquired from an 'extrajudicial source.' ").

**21.** *Bell v. Chandler*, 569 F.2d 556 (10th Cir. 1978); *Walberg v. Israel*, 766 F.2d 1071 (7th Cir.1985). *Walberg v. Israel* reversed the Supreme Court of Wisconsin's decision in *Wisconsin v. Walberg*, 109 Wis.2d 96, 325 N.W.2d 687 (1982), which was cited in *Los* in support of the objective portion of the two-part test. *See Los*, 595 A.2d at 385. The decision by the Seventh Circuit in *Israel* has no bearing on the *Los* test.

lar lawyer is so hostile that the judge's impartiality toward the lawyer's client may reasonably be questioned.

The "extrajudicial source" language from *Los* was adopted from the case of *United States v. Grinnell Corp.*,[22] a 1966 United States Supreme Court case evaluating the federal statutory standard for disqualification of judges. Thirty years later, in *Liteky v. United States*,[23] the United States Supreme Court revisited that specific language from *Grinnell*. There, the Court explained that because "neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor*, than of an 'extrajudicial source' *doctrine*, in recusal jurisprudence."[24] This "extrajudicial source" is merely one, but not the exclusive, reason a predisposition can be wrongful or inappropriate.[25] The Court in *Liteky* also recognized that judicial rulings alone are an insufficient basis for recusal motions and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordi-

narily do not support a bias or partiality challenge."[26] In a concurring opinion, Justice Kennedy agreed with this general rule,[27] which is also consistent with our precedents.

In *Liteky*, the majority opinion held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible*."[28] The concurring Justices in *Liteky* argued that this standard effectively asks the reviewing court to determine "whether fair judgment is impossible" and could be construed to require "some direct inquiry to the judge's actual, rather than apparent, state of mind...."[29] Justice Kennedy advocated a more straightforward standard, to focus on "the appearance of partiality, not its place of origin":[30] "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified."[31]

22. 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

23. 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

24. *Id.* at 554–55, 114 S.Ct. 1147.

25. *See id.* at 551, 114 S.Ct. 1147 (providing further explanation).

26. *Id.* at 555, 114 S.Ct. 1147.

27. *Id.* at 561, 114 S.Ct. 1147 ("[T]he Court is correct to conclude that an allegation concerning some extrajudicial matter is neither a necessary nor a sufficient condition for disqualification under any of the recusal statutes.") (Kennedy, J., concurring).

28. *Id.* at 555, 114 S.Ct. 1147 (majority opinion) (emphasis added).

29. *Id.* at 563, 114 S.Ct. 1147 (Kennedy, J., concurring).

30. *Id.* (Kennedy, J., concurring).

31. *Id.* at 564, 114 S.Ct. 1147 (Kennedy, J., concurring). Similarly, in a post-*Liteky* case involving reviewing motions for disqualifications of judges, the United States Court of Appeals for the Third Circuit has stated:

[W]hen does a biasing influence require disqualification? Consistent with the common law, we begin in answering this question by presuming the honesty and integrity of those serving as adjudicators. Disqualification is required only when the biasing influ-

This Court has noted that "the mere fact that a Judge has made some pretrial rulings against a given defendant is not in itself sufficient to require his disqualification."[32] We have also recognized that "[t]here is no general rule that a judge is disqualified *per se* because of an adverse decision in a former case involving entirely different and unrelated criminal charges against the same party."[33] "[A] judge's participation in prior proceedings involving a defendant does not *per se* disqualify his participation in subsequent, unrelated proceedings."[34] These statements are consistent with *Liteky's* articulation of the general proposition that judicial rulings alone will not warrant recusal under the objective test.

 Most recently in *Jones v. State*, we found that the animosity expressed toward counsel at sidebar during a scheduling discussion in the penalty phase of the trial was objectively insufficient to cause doubt as to the trial judge's partiality.[35] "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."[36] An objective observer of a sidebar discussion would have no basis to entertain reasonable questions about the trial judge's impartiality absent something more.[37] By comparison, in *Stevenson v. State*, this Court held that a trial judge's request for a "murder case assignment prior to indictment in view of his prior contact with the victim in the suppression hearing" would raise a "serious question concerning whether his continued participation created the appearance of partiality." This Court disqualified that trial judge from participating in the proceedings upon remand,[38] concluding that

ence is strong enough to overcome that presumption, that is, when the influence is so strong that we may presume actual bias. This occurs in situations ... in which experience teaches that the possibility of actual basis is too high to be constitutionally tolerable. A court must be convinced that a particular influence, under a realistic appraisal of psychological tendencies and human weaknesses, poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. *Johnson v. Carroll,* 369 F.3d 253, 263 n. 4 (3d Cir.2004) (quoting *Del Vecchio v. Ill. Dept. of Corr.,* 31 F.3d 1363, 1375 (7th Cir.1994) (en banc)), *cert. denied,* 544 U.S. 924, 125 S.Ct. 1639, 161 L.Ed.2d 483 (2005).

**32.** *Steigler v. State,* 277 A.2d 662, 668 (Del. 1971), *judgment vacated in part on other grounds,* 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 760 (1972); *accord Weber v. State,* 547 A.2d 948, 952 (Del.1988) ("[T]he bias envisioned by Canon 3C(1) [of the Delaware Code of Judicial Conduct] is not created merely because the trial judge has· learned facts or made adverse rulings during the course of a trial."); *Jackson v. State,* 684 A.2d 745, 753 (Del.1996) ("To require a judge to disqualify himself or herself from further par-

ticipation in a case where the judge acts as a gatekeeper for the admissibility of evidence would impose an unreasonable and totally impracticable standard.").

**33.** *Weber,* 547 A.2d at 952.

**34.** *Id.*

**35.** *Jones v. State,* 940 A.2d 1, 19 (Del.2007).

**36.** *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

**37.** In *Jones,* that "something more" was proffered to be the out of court remarks the trial judge made "in a public setting where she could be overheard and misconstrued." *Jones,* 940 A.2d at 19. We found that "[a]ny issue of bias in favor of the death penalty is moot because a life sentence was in fact imposed." *Id.*

**38.** *Stevenson v. State,* 782 A.2d 249, 257 (Del. 2001). In answering that question affirmatively, we explained that our review was for whether "his conduct created the unacceptable risk that a reasonable observer would so conclude." *Id.* at 258.

the trial judge's personal request for assignment of the murder cases even before the defendants were indicted[39] would cause an objective observer to entertain reasonable questions about the judge's impartiality.

### 1. Standard of Review for Motions to Recuse or Disqualify

■■■ A trial judge must undertake a two-step analysis on the record when confronted with a motion to recuse or disqualify himself or herself. The first step requires the judge to be subjectively satisfied that he or she can proceed to hear the cause free of bias or prejudice concerning that party. Even if the judge is satisfied that he or she can proceed to hear the matter free of bias or prejudice, the second step requires the judge to examine objectively whether the circumstances require recusal because of an appearance of bias sufficient to cause doubt as to the judge's impartiality. If a judge's demeanor or actions would lead an objective observer to conclude that a fair and impartial hearing is unlikely, the judge should recuse himself or herself. On appeal, we review the trial judge's analysis of the subjective test for abuse of discretion. Because a claim of appearance of impropriety implicates a view of how others perceive the conduct of the trial judge, we review the objective determination on its merits *de novo* to determine whether an objective observer would entertain reasonable questions about the judge's impartiality, thus warranting recusal.

■■ In addressing whether a trial judge's actions in an unrelated case involving the same attorney may raise objective questions of bias, federal courts have recognized that "bias in favor of or against an attorney can certainly result in bias toward the party."[40] We have previously decided in *Jones* that the current trial judge did not abuse her discretion in denying a motion to disqualify where the same defense attorney argued that she was biased against him.[41] In this subsequent, unrelated case, that same defense attorney now argues that the current trial judge has carried a bias against him originating from that case, to the postconviction motion Gattis brings here.

A finding of no bias in one case does not, as Gattis's attorney correctly argues, preclude us from determining that the current trial judge should have disqualified herself here. Nevertheless, it is but one factor to be considered in the calculus of our objective determination. Gattis argues that the current trial judge remained upset with his counsel, as evidenced by her reference to *Jones* in denying this postconviction motion. In particular, the current trial judge cited her post-trial opinion in *Jones* and noted: "Unfortunately, this defense attorney has begun to develop a disturbing pattern of personally attacking the trial judge whenever he finds himself on the losing end of a capital case."[42] Gattis also relies upon the denial of his counsel's motion to extend the time period on his briefing schedule as well as the page limitations. Thus, we must determine whether these circumstances would lead an objec-

**39.** *Id.* at 259.

**40.** *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir.1976) (per curiam); *see also Walberg v. Israel*, 766 F.2d 1071, 1077 (7th Cir.1985) ("[T]he judge who is so hostile to a lawyer as to doom the client to defeat deprives the client of the right to an impartial tribunal."). *See generally Disqualification of Judge for Bias against Counsel for Litigant*, 54 A.L.R.5th 575 (1998).

**41.** *Jones*, 940 A.2d at 19.

**42.** *State v. Gattis*, 2005 WL 3276191, at *20 (Del.Super.).

tive observer to conclude that a fair and impartial hearing is unlikely.

 Judicial rulings alone, such as the denial of a motion to recuse or disqualify or of a request to increase the time limitation on the briefing schedule or the length of the briefs, are insufficient bases for recusal.[43] To an objective observer, these particular rulings would carry little or no weight. Likewise, the fact that similar issues have been raised in and disposed of in an unrelated proceeding does not require disqualification.

Although an objective observer's interest may be piqued where a trial judge makes reference in her ruling to an unrelated case involving the same counsel, we do not find that an objective observer would consider this reference (in dicta) as an indication of demeanor sufficient to imply that the trial judge is unable to conduct a fair and impartial hearing. Because an objective observer would not entertain reasonable questions about the current trial judge's impartiality, Gattis's argument that she erred in denying his motion to disqualify is without merit.

## B. Denial of Gattis's motion for more time to brief and an extension of the page limits

 Gattis next argues that the Superior Court abused its discretion in denying his request for an extension of the time period for filing and of the page limitations for a brief. Although he provides reasons why he initially made the request, he focuses on the consequence that "counsel was forced to edit the opening brief from fifty to thirty-five pages resulting in the

removal of the arguments Gattis sought to advance in his brief in support of his claim for postconviction relief." Applications for extension of time and page limits are addressed to the trial judge's discretion and are reviewed for an abuse of discretion.[44]

 Here, the Superior Court devoted four-pages to explaining why it was denying both Gattis's request for an additional seven days to complete this opening brief and his request to increase the page limitation. With regard to the request to increase the page limitations, the Superior Court noted:

> [Defense counsel] is, of course, free to structure his brief any way he chooses, and to tender any argument that he considers to be persuasive. The Court has not prejudged any of the above-cited issues, and is ready to be swayed by reasonable argument on any of them. However, part of the process of appellate advocacy is to narrow a plethora of available arguments to those that have the greatest legal merit, and therefore a better chance of attaining relief for one's client. The fact that this is a death penalty case does not absolve defense counsel of that responsibility, or require the Court to plume through lengthy, arduous briefs in order to discern the legal issues of true import.

The Superior Court also noted the timing of these requests (four days before the brief due date) and that a request for an extended briefing schedule had already been granted once, at the request of the same trial counsel. We find no abuse of discretion with the Superior Court's denial of these requests.

---

43. *See generally Petition of Wittrock*, 649 A.2d 1053, 1054 (Del.1994) ("[A] trial judge's rulings alone almost never constitute a valid *per se* basis for disqualification on the ground of bias.").

44. Further, "[t]he appealing party is generally afforded the opportunity to select and frame the issues it wants to have considered on appeal." *Flamer v. State*, 953 A.2d 130, 134, 2008 WL 2588703, at *2 (Del.2008).

## C. Ineffective Assistance of Counsel Claim

 Next, Gattis argues that the Superior Court erred in denying his ineffective assistance of counsel claim because his claim was not procedurally barred under the "interests of justice" exception. He contends that the Strickland[45] standard was misapplied in his first postconviction motion due to the Superior Court's improper reliance on Lockhart v. Fretwell.[46] The Superior Court found that this claim was procedurally barred, but because "death is different," it proceeded to evaluate the merits of his argument,[47] and concluded that Strickland had been properly applied. We review the denial of a motion for postconviction relief on claims of ineffective assistance of counsel for abuse of discretion.[48] "In discharging its appellate function, the Court must carefully review the record to determine whether competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous."[49]

The bulk of Gattis's argument rests on his theory that no reviewing court has "addressed the propriety of the standard used by the lower courts, reviewed the lower court's factfinding, or granted or conducted de novo review using the correct legal standard of Strickland, as set forth in [Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)]." In his reply brief, Gattis concedes that he made this identical argument to the Third Circuit in his petition for federal habeas relief.[50] Gattis overlooks his ineffective assistance of counsel claim in his previous appeals. In his first postconviction motion before this Court, he argued that "his counsel unreasonably and prejudicially failed properly and adequately to prepare for trial" and provided several grounds to support his argument.[51] After reviewing the record and the Superior Court's conclusions, this Court found that "Gattis provides no basis ... to find that any lack of preparation by trial counsel caused the jury to reach a verdict it would not otherwise have reached."[52] We thereafter rejected his ineffective assistance of counsel claim.

On Gattis's federal habeas petition, the United States District Court of Delaware reviewed the record to determine "whether the Delaware Supreme Court unreasonably applied Strickland to Gattis's claims that various acts and omissions by Gattis's trial counsel constituted ineffective assistance of counsel."[53] The District Court held:

---

**45.** Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**46.** 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**47.** Gattis, 2005 WL 3276191, at *3–13.

**48.** Dawson v. State, 673 A.2d 1186, 1196 (Del. 1996).

**49.** Id.

**50.** In his reply brief, Gattis argues: "In the district court, the court once again relies upon [Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)] as 'clarifying' the standard of Strickland, and the Third Circuit never addressed the propriety of that

analysis, although appellant asked them to do so."

**51.** Gattis v. State, 697 A.2d 1174, 1184–86 (Del.1997) ("Specifically, Gattis contends that his attorneys (a) failed to determine and develop adequately his version of the facts; (b) failed to interview the relevant witnesses; (c) failed to use the available means of discovering exculpatory physical and testimonial evidence; (d) failed to make appropriate objections during the course of trial; and (e) did not have any unified theory of defense to the charges brought against him.").

**52.** Id. at 1186.

**53.** Gattis v. Snyder, 46 F.Supp.2d 344, 379 (D.Del.1999).

This court finds that Gattis has not offered any evidence showing that his trial counsel's pretrial preparation and trial performance were either unreasonable or egregious, or caused prejudice. Furthermore, this court finds that the Delaware Supreme Court did not unreasonably apply clearly established federal law, and did not base its decisions on an unreasonable application of the facts. Accordingly, this court finds this claim fails on the merits.[54]

The Third Circuit affirmed the District Court:

We agree [with the District Court]. The state courts correctly identified the relevant Supreme Court precedent—*Strickland*—and accurately described the two familiar tests which the prisoner must pass to obtain relief, i.e., show that counsel's performance was objectively unreasonable and "that there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." Moreover, the state courts' application of *Strickland* to the facts before them was reasonable.[55]

Superior Court Criminal Rule 61(i)(4) carves out an exception for consideration of claims that are formerly adjudicated when reconsideration of the claim is warranted "in the interest of justice." Ineffective assistance of counsel claims are controlled by *Strickland,* and this Court and the federal courts have found that the *Strickland* standard was satisfied. The interests of justice do not warrant further consideration of this claim. We conclude that the Superior Court did not abuse its discretion in finding that Gattis's attempt to relitigate his ineffective assistance of counsel claim was procedurally barred.

## D. The *Ring*—Based Argument

■ Gattis next argues that the Superior Court erred when it determined that the presiding judge properly applied a preponderance of the evidence standard rather than a beyond a reasonable doubt standard in determining the finding of fact that the aggravating circumstances outweighed those offered in mitigation. Specifically, Gattis argues that *Apprendi v. New Jersey*[56] "requires that the finding that aggravating circumstances outweigh mitigating circumstances be made not by a preponderance of the evidence, but beyond a reasonable doubt." To support this argument, Gattis cites to this passage in *Apprendi*:

Other than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.* With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. *It is equally clear that such facts must be established by proof beyond a reasonable doubt.*"[57]

---

54. *Id.* at 380.

55. *Gattis v. Snyder,* 278 F.3d 222, 236 (3d Cir.2002) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

56. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

57. *Id.* at 490, 120 S.Ct. 2348 (quoting *Jones v. United States,* 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (Stevens, J., concurring) and citing *id.* at 253, 119 S.Ct. 1215 (Scalia, J., concurring)) (emphasis added).

■ Applying this language, Gattis argues that the Delaware capital sentencing scheme is unconstitutional "because the finding that aggravating circumstances outweigh those offered in mitigation is an element necessary to the imposition of death and, thus, must be subject to the reasonable doubt standard." Our review for a statute's constitutionality is *de novo.*[58]

On Gattis's direct appeal, this Court pointed out that the "jury unanimously concluded that the State had established beyond a reasonable doubt the existence of two statutory aggravating circumstances."[59] Subsequently, by a vote of ten to two, the jury "found by a preponderance of the evidence that the aggravating circumstances outweighed the mitigating circumstances."[60] The presiding trial judge independently determined the existence of the same statutory aggravating factors found by the jury and, after concluding that the aggravating circumstances outweighed the mitigating circumstances, imposed the death penalty.[61]

The constitutionality of Delaware's capital sentencing scheme has been challenged since the United States Supreme Court's decision in *Ring v. Arizona,*[62] and this Court has repeatedly upheld it as constitutional.[63] Gattis's argument that the aggravating circumstances must outweigh the mitigating circumstances beyond a reasonable doubt—not, as 11 *Del. C.* § 4290(c)(3)(b.2) allows, by a preponderance of the evidence—overstates the *Apprendi* holding and has already been answered negatively.[64] As we have explained:

> Although a judge cannot sentence a defendant to death without finding that the aggravating factors outweigh the mitigating factors, it is not that determination that increases the maximum punishment. Rather, the maximum punishment is increased by the jury's unanimous finding beyond a reasonable doubt of the statutory aggravator. At that point a judge can sentence a defendant to death, but only if the judge finds that the aggravating factors outweigh the [mitigating] factors. Therefore, the weighing of aggravating circumstances against mitigating circumstances does not increase the punishment. Rather, it ensures that the punishment imposed is appropriate and proportional.[65]

Thus, "the Sixth Amendment, as applied through *Ring* and *Apprendi,* permits the dual-scheme established by Delaware's sentencing statute."[66]

---

**58.** *Starling v. State,* 882 A.2d 747, 756 (Del. 2005); *Thomas v. State,* 725 A.2d 424, 427 (Del.1999).

**59.** *Gattis v. State,* 637 A.2d 808, 821 (Del. 1994). Those aggravating circumstances were that Gattis committed the murder during the commission of a burglary, and he had been previously convicted of a violent felony. *Id.*

**60.** *Id.* at 822.

**61.** *Id.*

**62.** 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

**63.** *See, e.g., Brice v. State,* 815 A.2d 314 (Del. 2003); *Ortiz v. State,* 869 A.2d 285, 305 (Del. 2005); *Starling,* 882 A.2d at 757.

**64.** *See Brice,* 815 A.2d at 322 (answering the question of whether *Ring* requires that a jury must find beyond a reasonable doubt that all aggravating factors found to exist outweigh all mitigating factors found to exist in the negative).

**65.** *Starling,* 882 A.2d at 757 (quoting *Ortiz,* 869 A.2d at 305) (internal brackets in original omitted).

**66.** *Id.* That we have already determined that our sentencing structure does not violate *Apprendi* or *Ring* does not require us to address

■ The Superior Court found that Gattis's argument was procedurally barred under Rule 61(i)(1) and 61(b)(2). We agree with the Superior Court's conclusion that the issue is controlled by well-settled Delaware law.[67] Further, Gattis has not shown that a "colorable claim" that "a miscarriage of justice" has occurred for purposes of invoking the fundamental fairness exception of Superior Court Criminal Rule 61(i)(5). Under Rule 61(i)(5), the defendant bears the burden of proving the existence of a constitutional violation.[68] This Court has held that the "fundamental fairness exception is extremely narrow and is only applicable in limited circumstances such as when the right relied upon has been recognized for the first time after direct appeal."[69] Those circumstances are not present here. Gattis's argument has no merit.

## E. Presiding Trial Judge's Extrajudicial Contact with the Jurors Claim

■ Next, Gattis argues that the Superior Court erred in determining that the presiding trial judge's "extrajudicial contact with several of the trial jurors, which occurred after discharge of the jurors on the case but before the judge announced his sentencing decision, did not constitute egregious circumstances creating a presumption of prejudice sufficient to warrant vacating Gattis's death sentence."[70] To support this argument, Gattis points to a 1992 article printed in the Wilmington News Journal as "newly discovered evidence" that would excuse the procedural bars of Rule 61(i)(1) and (2).[71] The Superior Court denied this argument because it found that the claim was available to Gattis when he made his first motion in 1994.[72] In addition to Rules 61(i)(1) and (2) barring the claim,[73] the Superior

the question of whether *Ring* or *Apprendi* may be retroactively applied to Gattis's case. The Supreme Court has decided that *Ring* is not to be applied retroactively. *Schriro v. Summerlin,* 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *accord Steckel v. State,* 882 A.2d 168, 171 (Del.2005). The Third Circuit has decided that *Apprendi* is not to be applied retroactively. *United States v. Swinton,* 333 F.3d 481, 487–91 (3d Cir.2003).

67. *See e.g., Ortiz,* 869 A.2d at 302 ("Delaware's hybrid form of sentencing, allowing the jury to find the defendant death eligible and then allowing a judge to impose the death penalty once the defendant is found to be death eligible, is not contrary to the Sixth Amendment of the United States Constitution, as construed in *Apprendi* and *Ring.*") (citations omitted).

68. *Bailey v. State,* 588 A.2d 1121, 1130 (Del. 1991).

69. *Id.* (quotations omitted).

70. As found by the Superior Court, the presiding trial judge had contact with the jurors twice after the jury had been dismissed of its duty. *State v. Gattis,* 2005 WL 3276191, at

*19 (Del.Super.). The presiding trial judge "thanked the jurors for their service, stated that their non-unanimous sentencing recommendation 'did not make it easy' on him, and, at a later chance encounter on the street, told a juror the date of sentencing because that juror, having participated in lengthy, arduous trial, was interested in its consideration." *Id.*

71. According to the article, one of the prosecutors "noted that several of the jury members kept in touch with [the presiding trial judge] after the trial, and some attended Thursday's sentencing."

72. *Id.* at *18.

73. *Id.* The Superior Court found that Gattis failed to file within the time constraints under the applicable version of Rule 61(i)(1). The court also noted that Rule 61(b)(2) "mandates that Gattis advance all grounds for relief that were available to him in his first postconviction motion. Gattis' reliance upon a 1992 News Journal article written shortly after his conviction as the factual predicate for this argument demonstrates that the claim was undoubtedly available to him when he filed the 1994 motion." *Id.*

Court also found that Gattis had not met his burden of establishing a "colorable claim" that a miscarriage of justice occurred because of a constitutional violation under Rule 61(i)(5).[74]

Gattis argues that his counsel is not obligated to search "all media sources for any potential claim which may have arisen as a result of the conduct outside the record." When discussing whether new evidence warrants a new trial, this Court has held "the defendant must establish (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial and could not have been discovered before by the exercise of due diligence; and (3) that it is not merely cumulative or impeaching."[75]

We need only address the second prong of this analysis to conclude that Gattis's argument lacks merit. The newspaper article, which was published in a newspaper of general circulation, was public information well before Gattis's postconviction motion. Although it was not discovered until later, Gattis has not established that the newspaper article could not have been dis-covered before postconviction relief by the exercise of due diligence.[76] The Superior Court correctly applied the procedural bars to Rule 61(i)(1) and (2) to this claim.

We also conclude that the Superior Court correctly determined that the fundamental fairness exception of Rule 61(i)(5) does not apply either. Gattis argues the interaction between the presiding trial judge and the jurors created the presumption of prejudice and, at a minimum, the appearance of impropriety, either of which would be sufficient to warrant vacating Gattis' death sentence.[77] The Superior Court found that the presiding trial judge was not improperly influenced in his sentencing decision and that "even if the presumption of juror prejudice from out-of-court contact for some reason applied to judges, the evidence produced at three hearings on the matter has rebutted that presumption beyond a reasonable doubt."[78] The record supports these findings. Because Gattis has not demonstrated that the complained of contact between the presiding trial judge and the jury was prejudicial to his case, this argument lacks merit.

---

74. *Id.* at * 19.

75. *Downes v. State*, 771 A.2d 289, 291 (Del. 2001).

76. *See also Rhodes v. Minnesota*, 735 N.W.2d 315, 319 (Minn.2007) (denying postconviction relief based on a claim of new evidence in a newspaper article because the defendant did not show that the newspaper article "was not available to him or his counsel during his trial or that his failure to learn of it before trial was not due to lack of diligence"); *United States v. Zorilla*, 924 F.Supp. 560, 562 (S.D.N.Y.1996) ("Thus, it is plain from the petition that reports about Group 33 were circulating in the press long before the present petition was filed, and the particular stories Zorilla now relies upon as support for his petition were actually printed ten days before his first § 2255 petition was filed. Zorilla offers no excuse for his counsel's failure to have presented the issues now before the Court in the first petition.").

77. Gattis also argues the interaction violated his right to a fair trial because "[t]he extrajudicial contacts between [the presiding trial judge] and the jurors in this capital murder case constitute 'egregious circumstances' that create a presumption of inherent prejudice warranting invalidation of the sentence imposed...."

78. *Gattis*, 2005 WL 3276191, at *20 (citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954)). In addition the Superior Court found "[t]here is not a shred of evidence that saying 'thank you' or '1:00 p.m. next Monday' caused [the presiding trial judge] to order an execution, there is also a total absence of case law that would require this Court to reach such a conclusion." *Id.*

## F. Presiding Trial Judge Giving Undue Weight to Jury's Death Recommendation Claim

■ Gattis's final argument is that the presiding trial judge gave undue weight to the jury's non-unanimous vote favoring the death sentence. Gattis rests this claim on a letter the presiding trial judge wrote about his contact with the jury, which states: "Any happenstance encounter I may have had with any *Gattis* juror had absolutely no influence upon me with regard to my sentencing determination. Of great weight, however, was the jury's 10 to 2 recommendation that Gattis be sentenced to death. Without such a lopsided recommendation, I was fully prepared to impose a life sentence."

The State argues that the claim was waived because it was not properly raised in the lower court. In turn, Gattis responds that the claim was presented to the court when he argued "the State misled the [presiding] trial judge by arguing that the jury's sentencing recommendation be given great weight is the claim that the judge in fact followed that recommendation and gave undue weight to the jury's sentencing recommendation."[79] Further, Gattis argues that to the extent that the claim was not presented, he could not brief it because the Superior Court abused its discretion in denying Gattis the additional briefing space necessary to adequately present this argument below. Notwithstanding the merits of the State's argument that Gattis was free to structure his argument within the constraints of the page limitations as he saw fit, and notwithstanding that we have already found no abuse of discretion by the Superior Court in denying the request for an extension of the page limitation for a brief, we address the issue as though it was not waived.

Gattis argues that the presiding trial judge's comments imply that he independently made the judgment that a life sentence was more appropriate than the death penalty, and that only when the jury recommended death by a vote of ten to two did he change his mind and impose the jury's recommendation. In turn, the State responds that the decision to impose the death penalty is a collaborative effort between the jury and the trial judge, and the trial judge could consider the jury's views in coming to his decision about the appropriate penalty for the murder. The State's argument is correct.

■ In *Garden v. State*,[80] this Court held "the judge must give the jury's determination 'great weight,' but the judge may override the jury's recommendation in appropriate cases."[81] As we noted, "where the jury recommends death, the trial judge may reject that recommendation and impose life."[82] However, the "Delaware death penalty procedure requires a record of the exact vote of the jury and that the advice will be given 'great weight' because it is the 'conscience of the community.'"[83] Additionally, in *Garden*, when the jury voted ten to two for a life sentence, this Court

---

**79.** In his 2003 Amended Motion for Postconviction Relief, Gattis argued the presiding trial judge "operated under a misapprehension of the appropriate weight to be given the jury's death recommendation in this case."

**80.** 844 A.2d 311 (Del.2004).

**81.** *Id.* at 314. The General Assembly subsequently amended the applicable portion of 11 *Del. C.* § 4209(d)(1) and (4) to reverse the

decision in *Garden* and allow the trial judge "to decide the weight the jury's recommendation should be given." *Starling v. State*, 882 A.2d 747, 759 (Del.2005) (discussing the amendments to the death penalty statute and the effect on *Garden*).

**82.** *Garden*, 844 A.2d at 314.

**83.** *Id.* at 315.

stated, "one cannot overlook the overwhelming vote of the jury."[84]

Gattis argues that the General Assembly's amendments to the death penalty laws in the wake of *Garden* requires reversal of his sentence, relying on the synopsis of the bill that provides that a judge "shall not be bound by the recommendation, but instead shall give it such weight as he or she deems appropriate under the circumstances present in a given case."[85] Gattis, however, overlooks that he was sentenced in 1992 and the amendments apply only to "all defendants tried, retried, sentenced or re-sentenced after July 15, 2003."[86] In addition to the fact that the statute has no bearing on his case, the record does not indicate that the presiding trial judge gave the jury's recommendation any more weight than he deemed appropriate. Gattis's argument that the presiding trial judge gave undue weight to the jury's recommendation lacks merit.

### III. Conclusion

The judgment of the Superior Court is **AFFIRMED.**

---

**84.** *Id.* at 316.

**85.** 74 Del. Laws 174, H.B. 287 (2003).

**86.** 11 *Del. C.* § 4209(h).