IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HANNA LAYTON,[1] | § | Nos. 567 & 569, 2018 |
| | § | Consolidated[2] |
| Respondent Below, Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| JACKSON LAYTON, | § | File No. CN18-04258 |
| | § | Petition No. 18-20461 |
| Respondent Below, Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| TERRANCE HOWARD, | § | |
| | § | |
| Petitioner Below, Appellee. | § | |

Submitted: April 26, 2019
Decided: May 10, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the parties' briefs and the record on appeal, it appears

to the Court that:

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] We hereby consolidate these appeals *sua sponte*. These appeals present common questions of fact and law, and, in the circumstances of this case, we conclude that the recusal order is reviewable as a subsidiary ruling that was made within the course of deciding the petition for guardianship and became final before the consolidated appeals were filed. *Cf. Los v. Los*, 595 A.2d 381 (Del. 1991) ("A ruling by a trial court on a motion for disqualification would generally be deemed interlocutory and not subject to review without compliance with the provisions of Supreme Court Rule 42. The ruling denying recusal, although interlocutory, became final in this case when the Family Court dismissed Father's petition because of his refusal to participate in the hearing." (citation omitted)).

(1)     The appellant, Hanna Layton ("Mother"), and the appellee Jackson Layton ("Father") have two daughters (the "Children"), who are now fifteen and twelve years old.  Mother filed these appeals from (i) a Family Court order (the "Dismissal Order") dismissing a petition for guardianship of the Children filed by the Children's maternal grandfather ("Grandfather") and (ii) a Family Court order denying Mother's motion seeking recusal of the Family Court judge.  Father argues that the Family Court's decisions should be affirmed; Grandfather has not appeared in the appeals.  For the reasons discussed below, we affirm.

(2)     The parties to this disheartening case have been involved in protracted litigation concerning the custody and guardianship of the Children since the parents' estrangement in 2011.  The Court summarized the background of this case in an earlier appeal in 2018;[3] we therefore recite only the facts that are necessary to understand the resolution of these appeals.  The Family Court awarded guardianship of the Children to the Children's maternal grandmother ("Grandmother") in August 2016.  At the time, the Children and Father had been engaging in reunification therapy with Dr. Samuel Romirowsky.  In 2017 and 2018, the Family Court found Mother and Grandmother in contempt of earlier court orders because they had substantially interfered with the reunification efforts in various ways.[4]  The Family

---

[3] *Layton v. Layton*, 2018 WL 5291968 (Del. Oct. 23, 2018).
[4] *Id.*

2

Court further found that "Grandmother had failed in her statutory responsibilities as guardian of the Children to provide for their emotional well-being and to comply with all Court orders because she failed to support the Children's reunification efforts and she allowed Mother daily access to the Children and participated with Mother in the continued poisoning of the Children against Father."[5] This Court affirmed the Family Court's rulings on appeal.[6]

(3) On July 17, 2018, based on Grandmother's continued obstruction of Father's reunification with the Children and the Court's finding that the Children would not be dependent, neglected, or abused in Father's care, the Family Court entered an order rescinding Grandmother's guardianship of the Children and awarding custody of the Children to Father (the "Rescission Order"). Mother filed a notice of appeal from the Rescission Order but never filed an opening brief; that appeal was therefore dismissed on April 9, 2019.[7] The Family Court initially had ordered that the rescission of guardianship would occur on July 20, 2018. In light of subsequent developments, however, on July 18, 2018, the court ordered that the rescission would occur immediately (the "Removal Order"), and the Children were

---

[5] *Id.* at *3.

[6] *Id.* at *6.

[7] *Layton v. Layton*, 377, 2018, Docket Entry No. 27 (Del.). Grandmother also had been a party to the appeal from the Rescission Order, but in November 2018 the Court dismissed the appeal as to her after her motion to proceed *in forma pauperis* was denied and she failed to meet the installment schedule for payment of the filing fee that was established by the Court. *Id.* Docket Entry No. 18.

transferred to Father's care on July 18, 2018.[8]  That same day, Grandfather filed a petition for guardianship of the Children.

(4)   Father moved to dismiss Grandfather's petition for guardianship.  On October 18, 2018, the Family Court granted the motion to dismiss (the "Dismissal Order").  The court held that the petition was barred by the doctrines of collateral estoppel and *res judicata* because, among other things, the facts regarding the Children's dependency were determined in the Rescission Order; Grandfather made the same arguments in his petition for guardianship that had been litigated in connection with the Rescission Order; and Grandfather was in privity with Grandmother because he had been a witness on Grandmother's behalf since April 2017, he had been actively engaged with Grandmother in disrupting the reunification therapy, and granting his petition for guardianship would be the equivalent of allowing Grandmother to refile a petition for guardianship.  Mother brought this appeal from the Dismissal Order.  Grandfather did not appeal.

(5)   Father argues that because Grandfather did not appeal from the Dismissal Order, Mother lacks standing to prosecute the appeal.  We agree.  This Court has held that where the petitioner has not appealed from the Family Court's

_____

[8] On July 20, 2018, Mother and Grandmother filed a notice of appeal from the Removal Order. On August 9, 2018, this Court dismissed that appeal as moot, because physical custody of the Children had already been transferred to Father and the merits of the decision to rescind guardianship and transfer custody to Father could be addressed in the appeal of the Rescission Order, which was pending. *Layton v. Layton*, 376, 2018, Docket Entry No. 20 (Del.).

order denying a petition for guardianship, the parents lack standing to prosecute an appeal from the Family Court's order.[9]  For this reason, Mother's appeal from the dismissal of Grandfather's petition for guardianship is dismissed.

(6)    On October 16, 2018, while Father's motion to dismiss Grandfather's petition for guardianship was pending, Mother filed a motion seeking recusal of the Family Court judge.[10]  The Family Court denied the motion on October 18, 2018. On November 8, 2018, the day after Mother filed the appeal from the Dismissal Order, Mother filed a notice of appeal from the order denying recusal.

(7)    Father argues that Mother's appeal from the order denying recusal should be dismissed as duplicative.  We agree that, when an appeal from a final ruling is pending, an appeal of a subsidiary or interlocutory ruling in the case generally should be addressed in the same appeal.  But in the circumstances of this case, in which Mother lacks standing to appeal the final ruling but Father has not argued that she lacks standing to appeal the order denying recusal, we have resolved the duplication issue by consolidating the appeals and addressing the merits of Mother's appeal from the order denying recusal.[11]

---

[9] *Lane v. Div. of Family Servs.*, 2014 WL 1272264 (Del. Mar. 27, 2014); *Morris v. Div. of Family Servs.*, 2012 WL 1883081 (Del. May 23, 2012).

[10] Grandfather had filed a similar motion on July 19, 2018, which the Family Court denied on July 23, 2018.  Mother and other maternal family members had also filed several other motions seeking recusal at various times in this prolonged litigation.

[11] *See supra* note 2.

(8)    When deciding whether recusal is appropriate, a trial judge must undertake the two-step analysis set forth in *Los v. Los*.[12]  The analysis includes both a subjective and an objective test.  First, the judge must determine whether she is subjectively satisfied that she can hear the case free of bias or prejudice concerning the party seeking recusal.[13]  Second, if the judge subjectively believes that she has no bias, the judge must determine whether there is the appearance of bias sufficient to cause objective doubt as to the judge's impartiality.[14]   On appeal, this Court reviews the judge's analysis of the subjective test for abuse of discretion and reviews the merits of the objective test *de novo*.[15]

(9)    In the order denying the motion for recusal, the Family Court judge cited *Los* and concluded that she was satisfied that she could proceed with the case free of bias or prejudice and that there was no appearance of bias sufficient to cause doubt as to the judge's impartiality.  We find no abuse of discretion with respect to the judge's determination that she had no subjective bias or prejudice.

---

[12] 595 A.2d 381 (Del. 1991).

[13] *Id.* at 384-85.

[14] *Id.* at 385.  *See also Gattis v. State*, 955 A.2d 1276, 1281 (Del. 2008) ("The first step requires the judge to be subjectively satisfied that she can proceed to hear the cause free of bias or prejudice concerning that party.  Even if the judge is satisfied that she can proceed to hear the matter free of bias or prejudice, the second step requires the judge to examine objectively whether the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality." (quoting *Jones v. State*, 940 A.2d 1, 18 (Del. 2007))).

[15] *Gattis*, 955 A.2d at 1281.

6

(10)  We also find no objective grounds upon which the judge's impartiality reasonably could have been questioned.  In essence, Mother argues that the Family Court judge exhibited bias against her and "the entire maternal family" by failing to credit certain witness testimony and by ruling against Mother and the maternal family members and in favor of Father.  This Court has held, however, that the fact that a judge has ruled adversely to a party does not establish bias against that party.[16]  Indeed, "a trial judge's rulings alone almost never constitute a valid *per se* basis for disqualification on the ground of bias."[17]  Instead, for the judge to be disqualified under the objective portion of the *Los* test, "the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case."[18]

(11)  In this case, the Family Court judge made multiple rulings in favor of Mother's side of the family, including awarding guardianship of the Children to Grandmother.  Even after Grandmother, Mother, and other maternal family members engaged in contumacious conduct and obstructed the reunification process established by the court, the Family Court gave them additional opportunities to correct course and do what was in the Children's best interest.  It was only after they repeatedly refused to do so that the Family Court rescinded Grandmother's

---

[16] *Boyer v. Boyer*, 2010 WL 2163908, at *2 (Del. May 25, 2010).
[17] *In re Wittrock*, 649 A.2d 1053, 1054 (Del. 1994).
[18] *Gattis*, 955 A.2d at 1282 (quotations and emphasis omitted).

7

guardianship and awarded custody to Father. Thus, we conclude that the Family Court's judicial rulings clearly do not establish that the Family Court judge did not act impartially.

(12) Mother raises one extrajudicial issue as a basis for concluding that the Family Court judge was objectively biased. Specifically, Mother argues that, in 2016, the Family Court judge sat on a four-member continuing legal education ("CLE") panel that included Dr. Romirowsky, the reunification therapist who worked with Father and the Children and who testified in some of the earlier proceedings involving this family.

(13) We conclude that this contention also does not demonstrate objective bias. First, Dr. Romirowsky did not testify in connection with Grandfather's petition for guardianship, because the petition was dismissed on the basis of collateral estoppel and *res judicata* arising from the Rescission Order. Thus, if Mother wanted to seek disqualification of the judge or appeal the judge's denial of a recusal motion on the basis of the judge's contact with Dr. Romirowsky, she should have done so in connection with the proceedings leading to the Rescission Order or the appeal from that order.

(14) Second, we cannot conclude that a judge's mere participation in a professional education event with a person who happens to be a witness in a proceeding before the judge constitutes objective evidence of bias. Mother

8

speculates that the Family Court judge and Dr. Romirowsky *might* have discussed the Layton litigation outside of the context of the proceedings. But mere speculation that there might have been improper *ex parte* communications is insufficient to warrant recusal.[19] Similarly, to the extent that Mother claims that the Family Court judge should have been disqualified because the CLE panel addressed a topic, "parental alienation," that was at issue in the *Layton* proceedings, we conclude that Mother's argument does not establish objective bias.[20]

NOW, THEREFORE, IT IS ORDERED that the appeal from the Family Court's order dismissing Grandfather's petition for guardianship is DISMISSED, and the Family Court's order denying Mother's motion for recusal is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[19] *Cf. Abbott v. Del. State Public Integrity Comm'n*, 2019 WL 937184, at *6 (Del. Feb. 25, 2019) (stating that a litigant's arguments about alleged *ex parte* communications required "an inferential leap that is not supported by any facts alleged in the complaint"); *id.* at *9 n.57 (citing *Patterson v. STHS Heart, LLC*, 2018 WL 4091633, at *4 (Tenn. Ct. App. Aug. 28, 2018), in which the Tennessee Court of Appeals held that recusal of a judge was not required where the argument for recusal was "based more on insinuation and speculation than on actual facts").

[20] *Cf. Lepine v. Lepine*, 223 So. 3d 666, 673-74 (La. Ct. App. 2017) (holding that trial judge did not err by denying husband's motion for recusal, which alleged, among other things, that the trial judge and wife's counsel were both presenters at a CLE on domestic abuse); *In re Wilborn*, 401 B.R. 848 (Bankr. S.D. Tex. Feb. 17, 2009) (concluding that recusal was not required based on legal opinions that the judge expressed during CLE presentations, and discussing cases); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 332 F. Supp. 2d 667 (S.D.N.Y. 2004) (concluding that recusal was not required based on statements, including about the case before the judge, that the judge made during a CLE presentation, and discussing cases).

9