IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ID No. 91004136DI |
| | ) | |
| JERMAINE WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION ON
MOTION FOR RECUSAL**

**JOHN A. PARKINS, JR., JUDGE**

Steven P. Wood (argued), Gregory E. Smith (argued), Esquire, Maria T. Knoll, Esquire, Esquire and John S. Taylor, Esquire, Department of Justice, Wilmington, Delaware – Attorneys for The State.

Eugene Maurer and Allison S. Mielke (argued), Wilmington, Delaware, and Herbert W. Mondros, Esquire, Margolis Edelstein, Wilmington, Delaware – Attorneys for Defendant.

The State has filed a motion asking me to recuse myself[1] which Defendant Wright opposes. The State's motion primarily rests on two arguments. First, it points to my[2] statements (made in the context of judicial proceedings) that I had little or no confidence in the verdict in this case. Its argument overlooks entirely two fundamental principles enunciated by the Delaware Supreme Court concerning judicial recusal. Further the State overlooks that the Delaware Supreme Court has agreed with my conclusions which, according to the State, require my recusal. Second, the State contends that I should recuse myself because several years ago I had a professional relationship and friendship with a Wilmington police detective (not involved in the investigation of the instant crime) who will likely testify at Defendant's second trial. I made a full and prompt disclosure of that relationship and both sides expressly

[1] It is unclear from the State's written motion whether it is addressed to me or some other unidentified judge. In its opening paragraph, for example, the State "prays that this Honorable Court issue an Order recusing the Hon. John E. [*sic.*] Parkins, Jr. from all further proceedings in this matter." The same phrase is repeated in the conclusion to the State's motion. At oral argument the State confirmed, however, that it intended that the motion be addressed to me. This is consistent with the Delaware Supreme Court's rulings that a motion for recusal should be addressed in the first instance by the judge who is the subject of the motion. *E.g., In re McLeod*, 99 A.3d 227 (Del. 2014) (TABLE); *In re Webb*, 23 A.3d 866 (Del. 2011) (TABLE).

[2] Throughout my judicial career I have always written my opinions in the third person in the hope that, at least superficially, the use of third person might reinforce the idea that the judge is writing for an institution and not expressing personal views. In this matter I have chosen to depart from that practice because I am the focus of this opinion and it seems strained to refer to my comments in this case as if they were made by someone else. I am not so vain as to think anyone has ever noticed, or even cared, that my opinions are written in third-person. I mention my use of first person here only out of caution lest it be misconstrued as an indication that I take the request for recusal personally. I note in passing that the use of third person in recusal opinions can sometimes yield an odd sort of reverse-anthropomorphism. Take, for example, a judge from the mid-west whose use of the third person constrained her to write: "the possibility that the Court's husband and son may have formed an opinion with respect to the reputation of a given defendant or any other matter implicated by this litigation does not give this Court pause . . . to doubt her own impartiality." *Williams v. Balcor Pension Investors*, 1990 WL 205805, *7 (N.D.Ill. Nov. 28, 1990).

consented to my presiding over this case. Years later, after I granted Wright relief, the State has had second thoughts. Even though no new facts have arisen since its waiver, it has reversed course and now asks me to now recuse myself. Its request is barred by its waiver. But, even putting the State's waiver aside, its argument is without merit for reasons the State has apparently overlooked. In this regard I note that the State has been unable to cite a single case in which a judge has recused himself under circumstances similar to those presented here.

### *Background*

In 2012 I wrote that "[i]t would be an understatement to say that this case has a long and convoluted history."[3] The case has become even more procedurally complex in the comparatively short time since then, and it is necessary to have an understanding of some of this recent history in order to understand the State's contentions. I will therefore briefly summarize the pertinent procedural events, beginning with my 2012 opinion.

- In January 2012 I issued an opinion in which I granted Wright relief under Superior Court Rule 61. (That opinion will be referred to as *Wright-2012*.)[4] In that opinion I denied most of Wright's claims for relief. However, I granted Wright a new trial because but I found that his confession was

---

[3] *State v. Wright*, 2012 WL 1400932, at *10 (Del. Super. Jan. 3, 2012).
[4] *Wright,* 2012 WL 1400932, at *47.

3

obtained in violation of *Miranda v. Arizona*[5] and because exculpatory evidence had been withheld from him in violation of *Brady v. Maryland.*[6]

- After issuing *Wright-2012,* I concluded that Wright was entitled to a new proof positive hearing. I conducted that hearing and I found that the State had not shown the required "proof positive and presumption great." Consequently I set bail for Wright at $200,000 cash. Wright was unable to make bail.

- The State appealed my *Wright-2012* decision as well as my decision that Wright was entitled to a new proof positive hearing and bail. During that appeal the Supreme Court twice remanded the matter to me for additional findings, none of which are germane to the issue now before me.

- The Supreme Court reversed *Wright-2012* as well as my finding that Wright was entitled to a new proof positive hearing and bail. (This Supreme Court opinion will be referred to as *Wright-2013*.)[7] The Supreme Court reinstated Wright's conviction and remanded to me for resentencing.

---

[5] 384 U.S. 436 (1966).
[6] 373 U.S. 83 (1963).
[7] *State v. Wright,* 67 A.3d 319, 319 (Del. 2013).

- Upon remand, I re-sentenced Wright to death, whereupon Wright appealed. In his appeal Wright challenged the rulings I made denying his other claims.

- The Supreme Court again reversed and this time vacated Wright's conviction and death sentence. It found that Wright was entitled to a new trial because, when additional withheld evidence was considered, Wright made out a *Brady* claim. (This Supreme Court opinion will be referred to as *Wright-2014*.)[8]

- The case has been remanded to me for the new trial, and the State has filed this motion asking me to recuse myself. This is my opinion.

### *Analysis*

I. <u>The standard to be applied.</u>

Ground zero of any recusal analysis[9]  is Rule 2.11[10] of the Delaware Judges' Code of Judicial Conduct. This section specifies, in non-exclusive terms, circumstances requiring a judge to recuse himself.[11] The State agrees that none of those specific circumstances

---

[8]     *Wright v. State,* 91 A.3d 972, 995 (Del. 2014).
[9]     *Reeder v. Del. Dep't of Ins.*, 2006 WL 510067, at *16 (Del. Ch. Feb. 24, 2006)("The touchstone for evaluating whether a judge should disqualify himself or herself is the Delaware Judges' Code of Judicial Conduct.")
[10]    In its motion the State mistakenly cited and quoted at length former Rule 3(c)(1), which was modified and re-codified several years ago. At oral argument the State conceded that Rule 2.11—not the out-dated Rule quoted in its motion--applies here.
[11]   Despite the length of the Rule, its importance justifies setting it out in full:

(A) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(1) The judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) The judge or the judge's spouse or domestic partner, or a person within the third degree of relationship, calculated according to the civil law system, to either of them, or the spouse or domestic partner of such a person:

(a) is a party to the proceeding, or an officer, director, or trustee of a party;

(b) is acting as a lawyer in the proceeding;

(c) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(d) is to the judge's knowledge likely to be a material witness in the proceedings.

(3) The judge knows that, individually or as a fiduciary, the judge or the judge's spouse or domestic partner or minor child residing in the judge's household has an economic interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(4) The judge
(a) served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it, or the judge was associated in the practice of law within the preceding year with a law firm or lawyer acting as counsel in the proceeding;

(b) served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy

(B) A judge should keep informed about the judge's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the personal economic interests of the judge's spouse or domestic partner and minor children residing in the judge's household.

(C) A judge disqualified by the terms of Rule 2.11, except a disqualification by the terms of Rule 2.11(A)(1) or Rule 2.11(A)(4), may, instead of withdrawing from the proceeding, disclose on the record the basis of the judge's disqualification. If the parties and their lawyers, after such disclosure and an opportunity to confer outside of the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

apply here.[12]  Instead it argues that a general catchall provision in Rule 2.11--a "judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . [the] judge has a personal bias or prejudice concerning a party"—requires my recusal.

Application of this catchall standard requires a two part-analysis: First, I must make a subjective determination whether I am biased; and second, if not, I must make an objective determination whether there is an appearance of bias which might reasonably raise questions about my impartiality.  The proverbial seminal case here is the Delaware Supreme Court's opinion in *Los v. Los.*[13] In that case, a Family Court judge denied a husband's request for recusal, which the husband appealed to the Supreme Court.[14]  On appeal the Supreme Court set out the procedure for trial judge's to follow when faced with a motion for recusal:

> When faced with a claim of personal bias or prejudice under [Rule 2.11] the judge is required to engage in a two-part analysis. First, he must, as a matter of subjective belief, be satisfied that he can proceed to hear the cause free of bias or prejudice concerning that party. Second, even if the judge believes that he has no bias, situations may arise where, actual bias aside, there is the appearance of bias sufficient to cause doubt as to the judge's impartiality.[15]

---

[12]    Tr. at 30-31.
[13]    595 A.2d 381 (Del.1991).
[14]   The appeal was taken after entry of a final judgment by the Family Court.  *Id.* at 383 n.2.
[15]    *Id.* at 385.

Since that opinion, the courts of this state have consistently applied what has become known as the *Los* test. I will first discuss the subjective test required by *Los*, and then I will present the objective analysis *Los* requires.

> A. *The subjective test.*

The first part of the *Los* test—whether I am satisfied I can hear the case free from bias—is subjective.[16] "First the judge must be satisfied as a subjective matter that the judge can proceed to hear the case without bias."[17] Because of its subjective nature, I need not cite any evidence in support of my conclusion, and "[o]n appeal of the judge's recusal decision, the reviewing court must be satisfied that the trial judge engaged in the subjective test and will review the merits of the objective test."[18]

In general, a trial judge satisfies the first prong of the *Los* test if he makes that determination on the record,[19] and I do so now. I am convinced that I am, have been and will continue to be impartial in these proceedings. I have therefore concluded that the subjective test in *Los* does not require me to recuse myself. The terse nature of this conclusion should not be taken as an indication that I have given this aspect of the *Los* test short shrift. As any judge would do under these circumstances,

---

[16] *Gattis v. State*, 955 A.2d 1276, 1285 (Del. 2008) ("The first step requires the judge to be subjectively satisfied that she can proceed to hear the cause free of bias or prejudice concerning that party.").

[17] *Dickens v. State*, 49 A.3d 1192 (Del. 2012)(TABLE).

[18] *Los*, 595 A.2d at 385.

[19] *Fritzinger v. State*, 10 A.3d 603, 611 (Del. 2010) ("The judge must make both determinations on the record.").

I have devoted considerable introspection to the issue. My reflection confirms my belief that at no time during this litigation have I been biased against the State. Indeed (although I need not cite any supporting evidence) I note the salient fact that I decided most of Wright's claims against him, which is hardly consistent with the State's notion that I am biased against it. [20]

B. *The objective test.*

1. *The standard for the objective test.*

The objective test requires me to determine whether an informed objective observer, after considering all the facts and circumstances of the case, would conclude that a fair and impartial hearing was unlikely. In *Fritzinger v. State* the Delaware Supreme Court stated the rule this way:

> [W]e must assess whether an objective observer would view all the circumstances and conclude that a fair or impartial hearing was unlikely. That requires us to assess the circumstances objectively to determine whether there is an appearance of bias sufficient to cause doubt about judicial impartiality.[21]

---

[20] The State contends that a statement I made when I disclosed my friendship with Captain Browne "is, in effect, a ruling that the first or 'subjective' prong of the *Los* recusal [sic] precludes his participation in the matter." State's Mot. for Recusal, ¶ 17. This is not correct. In that disclosure I stated I could not be objective if I were called upon to make judgments about his credibility. Up until this point Captain Browne's credibility has never been put in issue in this case, and given his role in this matter, it is highly unlikely to become an issue in the future. Consequently, my statement that I could not fairly judge Captain Browne's credibility is not the equivalent of a subjective determination that I am biased.

[21] 10 A.3d at 613 (footnotes omitted).

The hypothetical "objective observer" is one who is fully informed about the facts and circumstances of the case.[22] The Second Circuit Court of Appeals described the objective observer as "reasonable person [who] *knows and understands all the relevant facts.*"[23] This view follows the approach taken by Judge Richard Posner of the Seventh Circuit, who described the test as:

> The test for an appearance of partiality is . . . whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case.[24]

Similarly, in a memorandum opinion declining to recuse himself Chief Justice Rehnquist wrote "[t]his inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances."[25] Four years after the Chief Justice's opinion, Justice Scalia labeled this principle "well established."[26]

---

[22] The State's motion did not address the standard to be applied when constructing the hypothetical observer. When asked about this standard at oral argument, the State responded the issue had not been addresses by the courts. Tr. at 3. To the contrary, scores of courts, including courts of this state, have applied the "informed observer" standard. Just a few of those cases are referenced in the text. Indeed, the court's research did not reveal a single case in which a court disavowed the "informed observer" standard. In any event, even though it had not researched the matter, the State conceded that the standard should be an "informed" observer.

[23] *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (emphasis added).

[24] *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985).

[25] *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (mem., Rehnquist, C.J.).

[26] *Cheney v. United States. Dist. Court for D.C.*, 541 U.S. 913, 923 (2004)(mem., Scalia, J.).

The State urges that, when applying the informed observer standard, I should not dissect the appearance issues like a judge, but I should instead consider them as would a man on the street. To the extent that the State is asking me to turn a blind eye to the contents of the record and the legal principles giving rise to my earlier rulings, I cannot do so.

> Like all legal issues, judges determine appearance of impropriety-not by considering what a straw poll of the only partly informed man-in-the-street would show-but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.[27]

### 2. *The State's substantive contentions.*

The State advances two arguments why an objective observer would conclude that I am biased. It primarily relies upon my statements in my opinion and from the bench that I lack confidence in the verdict.[28] Secondly, it relies upon my professional relationship and friendship with Captain William Browne of the Wilmington Police Department. Also sprinkled throughout its motion are perfunctory legal contentions which are not expressly tied to either of the State's major themes. I will address some of these in connection with the State's primary arguments insofar as I can tell they are related to either of those themes.

---

[27] *In re Drexel Burnham Lambert Inc.,* 861 F.2d at 1314.

[28] At oral argument the State labeled this argument as "being of much greater significance" than its argument about my friendship and former professional relationship with a witness. Tr. at 31.

Before considering principle contentions expressed in the State's motion, however, I will address an implied argument which permeates its motion: I was so anxious to grant Wright relief that I ostensibly invented a theory for him and granted him relief on the basis of an argument he did not make.

a. I did not invent an argument for Wright.

As noted previously, I found that Wright's confession was taken in violation of *Miranda*. In particular, I found that the interrogating officer's advisement that Wright would be entitled to appointed counsel only "if you are diligent and the State feels you need one," not only failed to adequately convey the *Miranda* warnings to Wright, but also was actually misleading. The Delaware Supreme Court never reached the merits of this in *Wright-2013* because it concluded that this contention was procedurally barred by Superior Court Criminal Rule 61. The State refers to this holding at several junctures in its motion,[29] perhaps to suggest that my ruling warrants recusal. In particular, it quotes a portion of the following passage by the Supreme Court in *Wright-2013* which taken in its entirety might suggest that I invented this argument on Wright's behalf:

> **The Superior Court decided to address the adequacy of Wright's *Miranda* warnings *sua sponte***. It listened to the same videotaped confession that was the subject of a motion to suppress before trial; a claim of error on direct appeal; the second Rule 61 motion; and the

---

[29] State's Mot. for Recusal, ¶¶ 5, 8, 19, 20, 22.

12

appeal of that motion. Each challenge was rejected after addressing Wright's understanding of his *Miranda* rights. In deciding Wright's fourth postconviction motion, the Superior Court did not have any new evidence upon which to conclude that Wright's *Miranda* warnings were defective. A defendant is not entitled to have a court re-examine an issue that has been previously resolved simply because the claim is refined or restated. **Wright did not ask for that relief,** but if he had, there would be no basis on which to find that he overcame the procedural bar of Rule 61(i)(4). Reconsideration is not warranted in the interest of justice.[30]

An observer might understand from the above passage that (1) "Wright did not ask for that relief" and (2) I "decided to address the adequacy of Wright's *Miranda* warnings *sua sponte*." This in turn might lead the observer to infer that I was so bent on granting Wright relief that I made up the theory for him and then sprang it as a surprise in my 2012 opinion.

The record, however, shows something entirely different. The Supreme Court was apparently incorrectly advised in *Wright-2013* about what the record has to say. Contrary to what the Court wrote, Wright did in fact expressly ask for relief based upon the *Miranda* warnings he was given. For example, in a portion of his 2009 amended petition--titled "The Admission of Mr. Wright's Alleged Confession Violated *Miranda*"-- Wright wrote:

---

[30]  State's Mot. for Recusal, ¶ 8 (citing *Wright-2013,* 67 A.2d at 323-4) (emphasis added).  In its motion the State does not quote the second highlighted portion in its motion.

13

> [T]he Miranda rights provided to Mr. Wright were facially defective. Rather than tell Mr. Wright that he had a constitutional right to the appointment of counsel if he could not afford one, Detective Mayfield conditioned the appointment of counsel on whether "[t]he State feels that you're diligent . . . and further conditioned his right to counsel on whether or not the State believes he "needs one." Detective Mayfield's version of Miranda rights fundamentally altered the nature of Mr. Wright's constitutional right to counsel . . . . [31]

When the Supreme Court wrote that I "decided to address the adequacy of Wright's *Miranda* warnings *sua sponte*" it was apparently laboring under a misapprehension about what is contained in this voluminous record. It had apparently not been told that the parties submitted multiple briefs and presented at least two oral arguments on this very issue. At the hearing on the instant recusal motion the State acknowledged that the *Miranda* issue had been fully briefed while the matter was pending before me:

> THE COURT: [T]here was briefing on the Miranda issue that I ruled upon, wasn't there?
>
> THE STATE: Yes, Your Honor, many rounds of briefing.
>
> THE COURT: On that particular issue.
>
> THE STATE: It was no exaggeration saying many rounds of briefing on specifically on the Miranda issue. I don't believe that's any exaggeration.[32]

---

[31] Consol. Successor Pet. For Postconviction Relief, D.I. 387, at 6.
[32] Tr. at 42.

I realize that by writing this I risk appearing to be obdurately clinging to the view that Wright's *Miranda* argument is not procedurally barred by Rule 61(i)(4). That is not my intent. Nor is my purpose here to quibble with the Supreme Court's conclusions. Rather, it is solely to show that, contrary to what an observer might infer from the passage in *Wright-2013*, I was not so determined to grant Wright relief that I invented a reason for him.[33]

### b. My comments that I lacked confidence in the verdict do not require my recusal.

Having dispensed with the preliminary matter, I will turn to the State's two primary arguments. The first argument focuses on comments I made during the proceedings concerning the verdict in the guilt phase of Wright's trial. In *Wright-2012* and in comments from the bench I expressed a lack of confidence in it. The State contends in its principal argument[34] here that my assessments of the evidence show that "an objective observer would surely conclude that [my] fair and impartial consideration [of future issues] is unlikely."[35]   The State

---

[33]   After Wright's conviction was vacated and the matter remanded I wrote a letter to counsel about scheduling. D.I. 494. The State asserts I "once again *sua sponte* raised the issue of the admissibility of the Defendant's confession, at least implicitly, by suggesting that a scheduling conference include a discussion of a schedule to resolve the issue." State's Mot. for Recusal, ¶ 20. No inference of bias arises from that letter. The Supreme Court held that Wright's *Miranda* claim was barred by Rule 61(i)(4), which applies to motions for postconviction relief. *See Wright-2013*, 67 A.3d at 323-34. But this is no longer a proceeding for postconviction relief and is not governed by Rule 61. It does not stretch the imagination to conclude there is at least a plausible argument that the reason why the Supreme Court held the *Miranda* claim was barred no longer applies here. As Defendant confirms, I was simply anticipating the obvious when I told counsel I wanted to promptly schedule the inevitable challenge to Wright's confession.

[34]   At oral argument the State told me that this is their principal argument. Tr. at 31.

[35]   State's Mot. for Recusal, ¶ 22.

overlooks, however, well-settled Delaware law, and also overlooks the fact that the Delaware Supreme Court expressly agreed with my conclusions.

> *i. The statements which allegedly show bias stem from my rulings on substantive issues which were upheld by the Supreme Court.*

The analysis must start, of course, with a consideration of my statements which the State claims manifest bias on my part. As already mentioned, those statements stem from my rulings that I lacked confidence in the verdict.  They were made in response to substantive constitutional standards established by the United States Supreme Court and followed by the Delaware Supreme Court, and the Delaware Supreme Court expressly agreed with my lack of confidence in *Wright-2014*.[36]

> *a.  The statements which allegedly show bias.*

Although the State refers in its motion to my "repetitive and public comments,"[37] it concedes that it relies exclusively[38] on the following three statements I made from the bench:

- "When you read the opinion you'll see that I have grave concerns over the sufficiency of the evidence that was

---

[36]  91 A.3d at 994.

[37]  Motion, ¶18.  The State's choice of the words "repetitive and public comments" is unfortunate and warrants comment.  As the State is presumably aware, The Delaware Code of Judicial Conduct Rule 2.10(A) requires a judge to "abstain from public comment on the merits of a pending or impending proceeding."  Thus the State's reference to my "repeated public comments" might easily be construed as suggesting that I violated Rule 2.10.  But as that rule expressly provides that it does not "extend to statements made in the course of the judge's official duties." The State concedes that I never made any "public comments" except in the course of these proceedings. Therefore, although perhaps unintended, the suggestion that I violated Rule 2.10 is misguided.

[38]  Tr. at 28.

[used] to convict Mr. Wright. In fact I have virtually no confidence in the evidence."[39]

- "As the Court pointed out in [*Wright-2012*] there is little if any, evidence to connect the defendant to the crime."[40]

- "Therefore I find that there is little, if any, evidence linking the defendant to this horrific crime, and therefore I am going to deny the State's application to hold the defendant without bail."[41]

The State argues that, "despite the Defendant's videotaped confession to the murder," these statements show that I believe that "the Defendant is, in effect, innocent."[42] An informed observer, however, would not reach that conclusion because that observer would be aware from *Wright-2012* that I took into account that confession:

- "**Aside from that confession** and the dubious testimony of Mr. Samuels about Mr. Wright's purported jailhouse confession, there is absolutely no evidence linking Wright to this horrific crime."[43]

- "[T]he only evidence against Wright **is his confession**, the statement of jail house informant Samuels, and the admission of Lorinzo Dixon during his plea colloquy that he participated in the crime"[44]

My assessment of the evidence was not fanciful. At one of the Rule 61 hearings in this case the State conceded that this assessment was accurate:

---

[39] State's Mot. for Recusal, ¶¶ 5,19.
[40] *Id.* ¶¶ 6, 19.
[41] *Id.* ¶¶ 6, 22.
[42] *Id.* ¶ 19
[43] *Wright*-2012, 2012 WL 1400932, at *39 (emphasis added).
[44] *Id.* at *24 (emphasis added).

THE COURT:  Is there anything else that links Mr. Wright to this killing other than his confession and Samuel's statement?  Is there any physical evidence that links him to there?

***

THE STATE:  No, there's not some piece of clothing that I can point to Your Honor from the record.

THE COURT:  Is there any evidence at all other than the aforementioned confession and Samuels testimony?

THE STATE:  If I may just have a moment, Your Honor.

THE COURT:  Do you want to confer?

THE STATE:  Yes, please.

THE COURT:  Sure, go ahead.

(State counsel conferring.)

THE STATE:  I just wanted to make sure I was not forgetting something, Your Honor and, no, I'm not.[45]

As mentioned, the State also contends that in effect I expressed an opinion that Wright is innocent.  An informed observer would know better:  in *Wright-2012* I wrote that "[t]he court emphasizes that it is not saying that Wright did not murder Phillip Seifert."[46] Further, the State overlooks that even if I had formed a view whether Wright actually murdered Philip Seifert, that view would not be pertinent to the recusal

---

[45]    June 12, 2009 Oral Argument Tr. at 122-23.
[46]    *Wright-2012*, 2012 WL 1400932, at *26.

calculus because it would have been based exclusively upon the record.[47]

In an oft-quoted passage, renowned Judge Jerome Frank once wrote:

> Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.[48]

### b. *My rulings were made in response to substantive law requirements.*

My holding that I had little or no confidence in the verdict was not gratuitous. Rather, I was required to address that issue by the substantive law underlying Wright's *Brady* claims. "The holding *in Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment."[49] Materiality for *Brady* purposes turns on whether the State's suppression of evidence undermines confidence in the verdict.

> One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light **as to undermine confidence in the verdict**.[50]

---

[47]  See text accompanying footnotes 54 through 68, *infra.*
[48]  *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2d Cir. 1943).
[49]  *United States v. Bagley,* 473 U.S. 667, 674 (1985) (internal quotations omitted).
[50]  *Kyles v. Whitley* 514 U.S. 419, 435 (1995) (emphasis added).

Not surprisingly, the undermines-the-confidence-in-the-verdict standard is routinely applied in the Delaware courts. In *Atkinson v. State*[51] the Delaware Supreme Court explained the law this way:

> The United States Supreme Court expanded the definition of materiality in *Kyles v. Whitley.* In *Kyles,* the Court held that materiality does not require a showing that the suppressed evidence ultimately would have resulted in an acquittal. Rather, the *Kyles* Court required that the defendant, in light of the undisclosed evidence, receive a fair trial, understood as a trial resulting in a verdict worthy of confidence. Thus, **in order to show a reasonable probability of a different result, a defendant need only show that the suppressed evidence undermines the confidence in the outcome of the trial.**[52]

My expression of concern about the verdict in Wright's trial, therefore, is not an expression of a personal bias, but merely an assessment of the evidence I was required to make by *Brady* and its progeny.

### c. *The Delaware Supreme Court reached the same conclusion about the lack of confidence in the verdict which I reached.*

In *Wright-2014*, the Delaware Supreme Court expressed the same concern I expressed about the verdict in this case. The Court wrote "[t]he postconviction evidence led the Superior Court to conclude that it had no confidence in the outcome of the trial. Neither do we."[53] Despite the obvious significance of the Supreme Court's conclusion, the State made no mention of it in its motion.

---

[51]   778 A.2d 1058 (Del. 2001).
[52]   *Id.* at 1065 (alteration in original and internal quotations omitted).
[53]   *Wright-2014*, 91 A.3d at 994.

In short, an informed observer would understand that I was not on an intellectual lark when I expressed doubt about the trustworthiness of the verdict and would also understand that the highest court of this state shared my concern. This alone is dispositive of the State's contention. Nonetheless, I will discuss two legal principles which are also dispositive.

     c.     <u>Statements in judicial rulings almost never constitute grounds for recusal.</u>

The State's motion overlooks entirely the well established principle that judicial pronouncements made during the course of litigation almost never constitute a ground for recusal. As the Delaware Supreme Court has observed:

> [T]his Court previously has held that the bias . . . is not created merely because the trial judge has made adverse rulings during the course of a prior proceeding. In fact, a trial judge's rulings alone almost never constitute a valid *per se* basis for disqualification on the ground of bias.[54]

This principle has often been repeated been repeated in one form or another in the Delaware courts.[55] It is also widely accepted elsewhere, and is seen as a prophylaxis against judge shopping:

> The traditional judicial view is that if a judge can be disqualified for bias following a comment or

---

[54]   *In re of Wittrock*, 649 A.2d 1053, 1053 (Del. 1994) (internal citations omitted).

[55]   *Flowers v. State*, 53 A.3d 301 (Del. 2012) (TABLE) ("The fact that a judge has made rulings adverse to a party is not, in and of itself, evidence of bias."); *Brooks v. BAC Home Loans Servicing, LP*, 53 A.3d 301 (Del. 2012) (TABLE) ("The trial court's adverse rulings simply form no valid basis for the judge's disqualification in this case."); *Dickens v. State*, 2 A.3d 73 (Del. 2010)(TABLE) ("[A] judge's adverse rulings, standing alone, do not constitute a valid basis for the judge's disqualification on the ground of bias."); *Fairthorne Maint. Corp. v. Ramunno*, 2006 WL 4782464, at *1 (Del.Ch. Aug. 31, 2006) ("The fact that you do not like what a judge says about the litigation at issue during a conference does not justify a request for recusal").

ruling during court proceedings there is no limit to disqualification motions and there would be a return to "judge shopping."[56]

The United States Supreme Court has also reached the conclusion that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[57] It is undisputed that all of my allegedly offending statements arose either as a judicial ruling or a reference to one of my judicial rulings. Consequently, they cannot be grounds for my recusal.

> d.      Statements not based on an extrajudicial source do not require recusal.

A second well-established principle which is dispositive here, and which the State also overlooked, is the extrajudicial source rule. In *Los*, the Delaware Supreme Court wrote that "[t]o be disqualified the alleged bias or prejudice of the judge '*must* stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"[58] The existence of an extrajudicial source has generally been thought by Delaware courts to be a *sine qua non* to a request for recusal.[59] The operation of the extrajudicial source rule was described by this court in 2011:

---

[56] Leslie W. Abramson, *Judicial Disqualification under Cannon 3 of the Code of Judicial Conduct*, at 25 (2d ed. 1986).

[57] *Liteky v. United .States,* 510 U.S. 540, 555 (1994).

[58] *Los*, 595 A.2d at 384 (emphasis added).

[59] *E.g., Henry v. State*, 931 A.2d 437 (Del. 2007) (TABLE) ("Generally, a claim of bias on the part of a judge must stem from an extrajudicial source. Because there is no evidence, indeed no claim, of any extrajudicial source of judicial bias, we conclude that Henry's fourth claim, too, is without merit."); *Chinski v. State*, 900 A.2d 100 (Del. 2006) (TABLE) (No requirement of recusal because "[w]e find no basis for disqualification of the judge in this case. There is no evidence of bias or prejudice stemming from 'an extrajudicial source' resulting 'in an opinion on the merits other than what the judge learned from his participation in the case.'"); *Beck v. Beck,* 766 A.2d 482, 485 (Del.

With respect to the objective inquiry, to be disqualified on this ground the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." The exclusive source of this judge's knowledge of Defendant is the criminal trial and the attendant pretrial and post-trial proceedings; this judge's knowledge of Defendant has arisen solely in the judicial context. Consequently, this Court's opinions on all of Defendant's motions, including the instant motions, are based solely on the record of this case and the applicable law; at no time have any extrajudicial sources influenced any decision on the merits of Defendant's arguments.[60]

While the existence of the extrajudicial source rule remains unquestioned in Delaware, its exact scope may be in a state of flux. When our Supreme Court first postulated the rule in *Los* it cited to the United States Supreme Court's decision in *United States v. Grinell*[61] for the proposition that a party seeking recusal because of a judge's opinions *must* show an extrajudicial source for those opinions.[62] But after the Delaware Supreme Court's opinion in *Los*, the United States Supreme Court revisited its holding in *Grinell.* In *Liteky v. United States*, the Court

---

2001) (the alleged bias or prejudice must be based on information that the trial judge acquired from an "extrajudicial source."); *Jackson v. State*, 684 A.2d 745, 743 (Del. 1996) ("To serve as a disqualifying factor, the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); *Custis v. Collins*, 615 A.2d 278 (Del. 1993) (TABLE) ("[T]he burden is upon the proponent of an allegation of bias to demonstrate that the judge's bias originated from an extra-judicial source and resulted in an opinion on some basis other than what the judge learned from his or her participation in the case.").

[60] *State v. Desmond*, 2011 WL 91984, at *13 (Del. Super. Jan. 5, 2011) (footnotes omitted).

[61] 384 U.S. 563 (1966).

[62] 595 A.2d at 384.

recast the extrajudicial source *rule* as the extrajudicial source *factor.*[63] According to the *Liteky* Court, in rare cases it would be possible for a party to make out a claim for recusal even in the absence of an extrajudicial source.[64] The Court held that judicial rulings (even if they are incorrect) are not grounds for recusal absent "knowledge acquired outside [judicial] proceedings," *or* a "deep-seated and unequivocal antagonism that would render fair judgment impossible."[65]

*Liteky* did not involve an interpretation of the Federal Constitution and therefore is not binding on state courts.[66] Although the Delaware courts appear not to have followed *Liteky*, the issue whether the so-called extrajudicial source rule is a *rule* or a *factor* is not free from doubt. With a single exception, the Delaware cases (including those from the Supreme Court) after *Liteky* suggest that Delaware still adheres to the extrajudicial source *rule.* The one exception, however, raises some question. In *Gattis v. State* the Delaware Supreme Court took note of the shift in *Liteky*:

> In *Liteky*, the majority opinion held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, *do not constitute a basis for a bias or partiality motion unless they "display a deep-seated favoritism or antagonism that would make*

---

[63] 510 U.S. at 556.
[64] *Id.* at 555-56.
[65] *Id.* at 556.
[66] *Liteky* involved interpretation of 28 U.S.C. § 455, which is very similar to the Delaware Judges' Code of Judicial Conduct Rule 2.11. "In 1974, Congress followed the ABA's lead and amended § 455(a) to harmonize the federal statutory approach with the Model Code of Judicial Conduct." *Desmond*, 2011 WL 91984, at *9.

*fair judgment impossible."* The concurring Justices in *Liteky* argued that this standard effectively asks the reviewing court to determine "whether fair judgment is impossible" and could be construed to require "some direct inquiry to the judge's actual, rather than apparent, state of mind...." Justice Kennedy advocated a more straightforward standard, to focus on "the appearance of partiality, not its place of origin." "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified."[67]

This language could be understood as an endorsement of *Liteky's* extrajudicial *factor* analysis. But other language in *Gattis* suggests the opposite is true. The *Gattis* court reiterated that "[u]nder the objective portion of the test, for the judge to be disqualified, the alleged bias or prejudice of the judge *must* stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."[68] Since *Gattis*, the Delaware Supreme Court[69] and the lower courts[70] have on multiple occasions

---

[67]   955 A.2d at 1284 (emphasis in original and added) (footnotes omitted).
[68]   *Id.* at 1281 (emphasis added)(internal quotations omitted).
[69]    *Pinkston v. State*, 91 A.3d 562 (Del. 2014) (TABLE) (citing *Los* for the proposition that "a claim of judicial bias must stem from an extrajudicial source."); *Fisher v. Fisher*, 979 A.2d 1110 (Del. 2009) (TABLE) ("Generally . . . allegations of a judge's bias must stem from an extrajudicial source and cannot be based solely on adverse rulings in the present case"); *Jackson v. State*, 21 A.3d 27, 35 (Del. 2011)("This Court rejected that claim under a plain error standard of review, because the judge's familiarity with the victim resulted entirely from a judicial, rather than extrajudicial source and recusal was therefore not required").
[70] *BAC Home Loans Servicing v. Brooks,* 2012 WL 1413608, at *3 (Del. Super. Feb. 2, 2012) ("Disqualification is only required where the alleged bias or prejudice of the judge stems from "an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.") (alteration

opined, without exception, that the absence of an extrajudicial source precludes the finding that recusal is required.

Whether Delaware still adheres to the extrajudicial source *rule* (as opposed to *factor*) is largely an academic question here because, under either standard, the State has failed to make a showing that my recusal is necessary. The State concedes, as it must, that my opinions were not based on any extrajudicial source.[71] If indeed Delaware adheres to the extrajudicial *rule* theory, the State's concession is the end of the story. On the other hand, if our Supreme Court would now subscribe to the extrajudicial *factor* theory, for all intents and purposes, the State's concession is still the end of the story. The State has not shown a "deep-seated favoritism or antagonism [on my part] that would make fair judgment impossible." First, as discussed above, the notion that I have manifested a "deep-seated favoritism or antagonism" overlooks that I was required by the applicable law to assess the strength of the State's case, and therefore my assessment was not gratuitous. Second, it ignores the fact that the Supreme Court expressly agreed with my lack of confidence in the verdict. Third, it forgets that I ruled in its favor on most of Wright's claims. Taken either singly or together, these

---

in original); *Johnson v. State,* 2011 WL 2083907, at *4 (Del. Super. May 4, 2011)("For a judge's personal bias against a defendant to be disqualifying, it must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); *State v. Carletti,* 2011 WL 6157469, at *1 (Del. Super. Dec. 9, 2011) ("[F]or the Commissioner to be disqualified, the alleged bias or prejudice "must stem from an extrajudicial source and result in an opinion on the merits of some basis other than what the ... [Commissioner] learned from his participation in the case.") (alteration in original).
[71] Tr. at 28-29.

26

facts dispel any notion that I have harbored deep-seated bias or antagonism against the State.

In sum, this case is no different from the one before the Delaware Supreme Court in *Henry v. State* in which it held:

> Henry's fourth claim is that the Superior Court judge who presided over the [Violation of Probation] hearing should have recused himself, presumably because his familiarity with Henry would result in judicial bias. Generally, a claim of bias on the part of a judge must stem from an extrajudicial source. Because there is no evidence, indeed no claim, of any extrajudicial source of judicial bias, we conclude that Henry's fourth claim, too, is without merit.[72]

### i. The State's belated argument misreads Liteky.

At oral argument the State argued, for the first time, that the context in which I made the allegedly offending statements somehow transformed them from appropriate judicial comment into something requiring recusal. It did not, however, explain the logic of this assertion and asserted no authority in support of it other than an erroneous interpretation of the United States Supreme Court's opinion in *Liteky v. United States.*[73] At oral argument the State articulated for the first time the following argument:

> And what *Liteky* said essentially was that . . . judicial rulings do not include, and I'm quoting from the *Litkey* opinion—this is the Supreme Court Reporter version in 1157—"in and of themselves, i.e., apart from surrounding comments or accompanying opinion, closed

---

[72]  931 A.2d 437, 437 ¶ 12 (Del. 2007) (TABLE) (footnote omitted).
[73]   510 U.S. 540.

parenthetical, they, and the they refers to judicial rulings, cannot possibly show reliance on extrajudicial source and only can in the rarest of circumstances evidence the degree of favoritism and antagonism required as discussed below when no extrajudicial source is involved."[74]

\* \* \*

The reason that matters is that what *Liteky* says is those kinds of comments, the ones surrounding rulings, are not subject to what I'll characterize as a great presumption of propriety.[75]

\* \* \*

But what *Liteky* says is that comments surrounding rulings are different than the rulings themselves. And that is the distinction that we think is of moment here.[76]

\* \* \*

Your Honor . . . what I think *Liteky* is talking about are comments that are not necessary to the ruling.[77]

The argument that judicial statements which are proper in one context of a judicial proceeding may give rise to recusal if made in another context of the judicial proceeding has never received any support in the case law. As one United States Court of Appeals put it, "there was no authority for the proposition that the time and manner of the judge's

---

[74] Tr. at 4-5.
[75] *Id.* at 6 (internal quotation marks added for clarity).
[76] *Id.* at 8.
[77] *Id.* at 70.

ruling creates a reasonable doubt about impartiality, absent any other indicia of bias or partiality."[78]

The State's reliance upon *Liteky* is misplaced; that case had nothing to do with whether the context of a judicial statement determined whether recusal was required. Instead, according to the *Liteky* Court, the issue before it was "whether required recusal . . . is subject to the limitation that has come to be known as the 'extrajudicial source' doctrine."[79] The language in *Liteky* to which the State alluded at oral argument is wholly unrelated to the proposition for which the State cites it. Rather, the *Liteky* Court simply pointing out that judicial rulings, in and of themselves, seldom disclose the existence of an extrajudicial source. The Supreme Court wrote:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source.[80]

I reject the argument, therefore, that my otherwise appropriate comments about my lack of confidence in the verdict somehow require my recusal merely because, in the State's view, they were made in the wrong phase of the proceedings.

---

[78] *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1057 (10th Cir. 2001) (internal alteration and quotation omitted).
[79] *Liteky*, 510 U.S. at 541.
[80] *Id.* at 555 (internal citation omitted).

### e. My decisions concerning Wright's bail do not show a deep- seated bias on my part.

In a random argument the State points to the amount of bail I set once I determined (erroneously) that Wright was entitled to bail. According to the State, the bail I set ($200,000 cash only) was lower than that in three other murder cases over which I presided.[81] The relevance of this is not explained in the State's papers, so I am left to assume the State believes this shows some "deep-seated favoritism or antagonism" on my part. If that is the intent of the State's reference to the bail I set for Wright, the contention is contradicted by the record. The State does not mention in its papers that the bail I set was the maximum recommended for Class A felonies in the bail guidelines for Justices of the Peace Courts. The State also forgets that I denied Wright's request to post property in lieu of cash, and overlooks the fact that after setting Wright's bail I stayed his release so that the State would have an opportunity to appeal my ruling. An informed observer, who was aware of these unmentioned facts, would not infer from the amount of bail I set that I was biased either against the State or in favor of Wright.

### f. My past professional relationship and friendship with a witness who has no stake in the outcome of the case does not require my recusal.

The State's other argument is that my relationship with Captain William Browne of the Wilmington Police Department requires me to

---

[81] In one of the three cases mentioned by the State I had no role in setting the defendant's bail.

recuse myself from Wright's trial. It makes this argument despite the fact that it previously expressly waived its right to seek my recusal on the basis of this. Their waiver alone bars the State's argument. But there are other reasons why that relationship does not require my recusal. First, Captain Browne has no stake whatsoever in the outcome of Wright's second trial and thus an informed reasonable observer would not believe his presence as a witness would affect my rulings in this case. Second, the jury—not me—will be called upon to make any necessary judgments about Captain Browne's credibility.

### i. Background matters relating to Captain Browne.

#### a. _My relationship with Captain Browne._

I first met Captain Browne when, while in private practice, I represented some Wilmington police officers who were sued in a 2004 federal civil rights action styled _Estate of Harry Smith v. City of Wilmington._ This civil case arose out of a police-involved shooting. As it does in all such matters, the Wilmington Police Department investigated the matter; (then Lieutenant) Browne was in charge of that investigation. As would be expected, I had frequent contact with him during my preparation for trial in the _Smith_ case.[82] During the pendency of the _Smith_ matter, Captain Browne was himself named as a defendant in a

---

[82] The _Smith_ case was tried before a federal jury in April 2007.

different civil rights action.[83]   I represented him (and others) in that matter until I was appointed to the bench in 2008.

Although I would characterize Captain Browne as a friend at that time, most of our interaction was professional. On a few occasions I visited Captain Browne at his home to discuss either the *Smith* matter or his own case.   I recall a single social interaction with him--in September 2007--when we attended a Phillies game together.   The isolation of the bench quickly took its toll on my friendship with him.   In the months after I assumed my current office I briefly spoke with Captain Browne perhaps two or three times; those contacts soon ceased entirely.   The last time I remember speaking with him was at a chance meeting at a funeral in October 2011, when we briefly conversed, in the presence of others. As I recall, the topic of that short conversation was the ill fortune of the Phillies who were then involved in a playoff series with the St. Louis Cardinals.

> ### b.  *The role of Captain Browne's testimony in the instant case.*

Captain Browne did not participate in the HiWay Inn investigation.[84]  Rather his testimony in the present matter relates to an

---

[83]    The State's petition incorrectly states that I represented Captain Browne in two matters.

[84]    Arguably Browne played a peripheral role in the HiWay Inn investigation.   The Wilmington Police Department executed the arrest warrant issued against Wright and the search warrant issued for the search of his home. (Both were executed at the same time).   The Wilmington police did so because the warrants were issued in connection with two crimes committed within the city.   Captain Browne was part of the Wilmington SWAT team that executed those warrants.   No evidence incriminating Wright in the HiWay Inn murder was found during that search.

attempted robbery of Brandywine Valley Liquor Store ("BVLS") which

may provide evidence which exculpates Wright. The Delaware Supreme

Court described the BVLS evidence and its exculpatory nature:

> The nearby BVLS attempted robbery occurred close in time to the Hi–Way Inn robbery. The two crimes occurred within forty minutes of each other and took place less than two miles apart. The descriptions of the suspects in the BVLS robbery were similar to the descriptions of the two men seen leaving the Hi–Way Inn. Both crimes involved the use of a firearm. The BVLS crime was an attempted robbery using a handgun, and the Hi–Way Inn murder involved the use of a .22 caliber weapon.

> As the Superior Court noted, a plausible argument can be made that the unsuccessful perpetrators of the BVLS attempted robbery were the same individuals involved in the Hi–Way Inn robbery shortly thereafter. The court explained:

>> It should be recalled that Debra Milner (the barmaid at the HiWay Inn) told police that prior to the crime a black man wearing a red plaid flannel shirt came into the tavern and apparently surveyed the scene. (After viewing photos Ms. Milner denied that either Wright or Dixon resembled that man.) No red shirt was ever found at Wright's or Dixon's home. But according to a report prepared by the Wilmington Police Department, Mr. Baxter described one of the Brandywine Village perpetrators as wearing a "red coat", suggesting of course that it was one of the Brandywine Village perpetrators, not Wright or Dixon, who cased the HiWay Inn.

> Police ruled Wright and Dixon out as possible suspects based on Baxter's witness identification. Such evidence, if presented at trial, would have been exculpatory.[85]

---

[85]  *Wright-2014,* 91 A.2d at 991-92.

There is no indication that his testimony will be disputed. Neither side disputed his testimony at the Rule 61 hearing, and the State has not pointed to any new facts in its motion to suggest that his testimony will change at trial.

> ### ii. *The State expressly waived any claim I should recuse myself.*

There are several reasons why Captain Browne's participation as a witness does not cause me to recuse myself. The one of immediate note is that the State has already waived its right to seek my recusal because of his participation

> ### a. <u>My disclosure of my relationship with Captain Browne and the State's waiver of any conflict.</u>

When I joined the court I inherited this case from my predecessor, who was the trial judge and presided over several pre- and post- trial hearings. By the time this case came to me the file was already quite voluminous. When I first assumed responsibility for it there was no indication Captain Browne would play any role in these proceedings. It was not until months later that I became aware of his possible role as a witness. By then I had invested considerable time familiarizing myself with the file. Upon learning of the possibility that Captain Browne might be a witness in the Rule 61 proceedings, I immediately disclosed my relationship and told counsel I did not think I could fairly rule upon his credibility if called upon to do so. I initiated a discussion with counsel about whether my recusal was necessary. Defendant's counsel asked me

not to recuse myself, but the State initially felt I should do so. I demurred at the time, telling counsel it appeared that Captain Browne's testimony would be undisputed, thus making any judgment about his credibility unnecessary. I also told counsel I was concerned that I had already devoted considerable time to familiarizing myself with the record and it would be a substantial burden on the court for a replacement judge to do that over again.

The State changed its mind a few days later and waived recusal. During an on-the-record teleconference, counsel for the State told the court:

> I think we just have, I guess, maybe a list of things to clean up. Just one short one on the William Browne issue. Your Honor, the State thinks that we might be able to resolve that issue entirely if counsel for Mr. Wright will waive any claim that you should not be able to decide the case based on that testimony and also having Jermaine Wright himself acknowledge that. Then the issue would go away.[86]

A few days after that conference Wright (and his counsel) appeared in open court, at which time I conducted a colloquy with Wright. During that colloquy I repeated the facts concerning my friendship and professional relationship with Captain Browne.[87] Wright, who had previously privately consulted with his counsel about this, personally

---

[86] Sept. 10, 2009 Teleconference Tr. at 2, D.I. at 427.

[87] In its motion for recusal the State recited that I "thus found it necessary" to advise Wright of my relationship. State's Mot. for Recusal, ¶ 4. This might suggest that my disclosures were something other than voluntary. The State requested that I advise Wright personally of my relationship with Captain Browne and I confirm Wright's waiver with him on the record. I would have to do this even if the State had not asked.

affirmed that he agreed to waive my recusal. At no time since then--until the filing of the present motion--has the State ever expressed any concern over my presiding in this case.

The State does not contend that its waiver is invalid, nor has it ever asserted the waiver was limited in scope. Although the rules for waiver of recusal are "quite exacting," they have been satisfied here. The Delaware Supreme Court summarized those rules:

> It is well settled in Delaware that a party may waive her rights. But, the standards for proving waiver under Delaware law are quite exacting. Waiver is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those rights. We also have explained that the facts relied upon to prove waiver must be unequivocal. Applying those principles, we have required a party claiming waiver to show three elements: (1) that there is a requirement or condition to be waived, (2) that the waiving party must know of the requirement or condition, and (3) that the waiving party must intend to waive that requirement or condition.[88]

All of these requirements are satisfied here. It is undisputed that the State knew that it had a right to seek my recusal, knew of the facts giving rise to that right and intended to waive that right.

Notably, the State does not contend there are any procedural irregularities in its waiver of recusal. The Delaware Judges' Code of

---

[88] *Bantum v. New Castle Cnty Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50 (Del. 2011) (internal alterations, footnotes, and quotations omitted).

Judicial Conduct provides that the parties may waive recusal, provided certain requirements are met:

> A judge disqualified by the terms of Rule 2.11 . . . may, instead of withdrawing from the proceeding, disclose on the record the basis of the judge's disqualification. If the parties and their lawyers, after such disclosure and an opportunity to confer outside of the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.[89]

The State agrees that (a) I disclosed on the record the basis of disqualification; (b) its counsel had an opportunity several days, in fact to confer outside of [my presence]; and (c) all agreed on the record that I should not be disqualified. I conclude, therefore, that the State's waiver was valid.

### b. The State is bound by its waiver.

Having made a valid waiver, the State is now bound by it. Courts have traditionally held that a waiver of a judge's potential recusal is binding. Just this year the United States Court of Appeals for the District of Columbia Circuit observed that the withdrawal of a request for recusal constitutes a waiver of that request and is therefore binding:

---

[89] Del. Judges' Code of Judicial Conduct Rul 2.11. The rule has thee exceptions where a waiver is prohibited. In general terms parties may not waive a conflict when a judge has a personal bias, has personal knowledge of disputed facts or has previously been involved in the matter in some capacity other than as a judge. The State does not argue that any of those exceptions are applicable here.

In the current appeal, Brice notes in passing a comment about Brice and one of the witnesses that the District Court made at the February 15, 2006, pre-trial hearing. Brice's counsel was present at that hearing. At the conclusion of the relevant pre-trial hearings, after initially objecting to the judge's comment and seeking recusal, Brice then expressly withdrew and thereby waived any recusal claim based on that comment.[90]

Other courts have reached the same conclusion about the binding nature of such waivers.[91]

There is a sound policy reason why a waiver of recusal, once made, cannot generally be withdrawn. Judicial resources are scarce, and after a party waives a right to seek recusal the presiding judge will ordinarily devote some those scarce resources to resolution of the matters raised in that case. As discussed later in this opinion, a withdrawal of that waiver would result in the irretrievable loss of the judicial resources expended on that case. Accordingly, courts cannot, and do not, allow withdrawal of a waiver of recusal except in the most extraordinary of circumstances.

> ### c. The State has not shown good grounds for withdrawing its waiver.

The State has fallen far short of showing any extraordinary circumstances which would justify allowing it to withdraw its waiver. It concedes that no new facts have come to light which prompt its motion.

---

[90] *United States v. Brice,* 748 F.3d 1288, 1290 n.1 (D.C. Cir. 2014).

[91] *Unif. Masters v. McKesson Corp.,* 465 F. A'ppx. 466 (6th Cir. 2012); *Fletcher v. Conoco Pipe Line Co.,* 323 F.3d 661 (8th Cir. 2003); *United States v. Bayless,* 201 F.3d 116 (2d Cir. 2000); *United States v. Sampson,* 12 F.Supp.3d 203 (D.Mass. 2014)("[A] waiver of grounds for recusal generally cannot be withdrawn at a later date.").

Rather, it asserts that it did not appreciate the consequences of its waiver at the time it made it.

According to the State, "[t]he importance of Captain Browne as a trial witness is now obvious, albeit only in hindsight." I need not, however, make a metaphysical determination whether that testimony is more important (a) when Wright is trying to establish he is entitled to a new trial, or (b) when Wright's new trial takes place. Absent a showing of the development of new facts, the State's failure to appreciate the possible consequences of its waiver is of no relevance here.

The State concedes that no new facts have come to light about Captain Browne's role in this matter. In its motion the State sought to explain why it now believes Captain Browne's role is somehow more significant than it was when it waived the conflict:

> The importance of Capt. Browne as a trial witness is now obvious, albeit only in hindsight. *[1]* He is, in effect, the sole witness to most of the important facts relevant to the identity of the perpetrators of the BVLS robbery. *[2]* This Court has held that evidence as to the identity of BVLS robbery perpetrators is exculpatory. *[3]* Obviously, if a jury were to conclude that either the Defendant of his indicted codefendant were [sic.] the perpetrators of the BVLS robbery, the evidence would be inculpatory.[92]

But all of these matters were either known or readily apparent at the time it waived its right to seek my recusal. The following refers to the

---

[92] State's Mot. for Recusal, ¶ 16 (italicized numbers added).

correspondingly numbered sentences in the afore-quoted passage from the State's motion:

1. The State concedes it was aware at the time of its waiver that Captain Browne "was the sole witness to most of the important facts relevant to . . . BVLS robbery."[93]

2. Although the State did not know, of course, at the time of its waiver that I would eventually hold "that evidence as to the identity of the BVLS robbery perpetrators is exculpatory," the State concedes my holding is "certainly similar' to the claim then being made by Wright at the time.[94]

3. With respect to the assertion that "[o]bviously, if a jury were to conclude that either the Defendant of his indicted codefendant were the perpetrators of the BVLS robbery, the evidence would be inculpatory," the State's concession that it is "obvious" dispels any thought that this was unknown to the State at the time of its waiver. More to the point perhaps, the State conceded at oral argument that it was aware of this when it waived recusal.[95]

When asked at oral argument whether there were any new facts which had come to light about Captain Browne's role, the State responded "[f]actually, Your Honor, there's not a change in the facts,"[96] and later, "the facts have not changed."[97] This precludes it from withdrawing its waiver.

The reason the State now offers is that it improvidently waived the right to seek recusal. At oral argument it contended that it did not become aware of the consequence of its waiver until the Supreme Court "refined" Wright's *Brady* claim in *Wright-2014*:

---

[93]   Tr. at 57.
[94]   *Id.* at 58.
[95]   *Id.*
[96]   *Id.* at 59.
[97]   *Id.* at 60.

40

> There's no question that we said what we said. It's in the record. And our response to the Court's questions is simply we think that circumstances have changed significantly because of the court's 2014 opinion and its refined description of the role of what I'll call the first robbery is in a determination of the defendant's guilt for the HiWay Inn robbery.[98]

Nowhere in these proceedings has the State explained how it is that the Supreme Court's *Wright-2014* opinion "refined" Wright's theory.

The idea that the significance of Captain Browne's testimony somehow did not become apparent to the State until *Wright-2014* is unsupportable. The State has not even attempted to point to anything in the record which misled it about the role of his testimony in this case. As the State conceded at oral argument, the way it understands the role of that testimony in light of the Supreme Court's "refine[ment]"[99] in *Wright-2014* is "certainly similar"[100] to the way it understood the testimony's role when it waived its right to seek recusal.

> *iii. Even putting aside the State's waiver, my relationship with Captain Browne does not require me to recuse myself.*

Captain Browne has no stake in the outcome of Wright's second trial and therefore, no informed reasonable observer would conclude that his presence as a witness would affect my rulings in this case. The authorities appear unanimous that a judge's friendship with a witness

---

[98] *Id.* at 55
[99] *Id.*
[100] *Id.* at 58.

who has no stake in the litigation does not require the judge to recuse himself. One respected treatise noted:

> While a judge's impartiality may sometimes be called into question on the basis of her friendships with parties or attorneys, the fact that a judge is friends with others who may play a role in a proceeding before her does not necessarily raise the same type of concerns. For example, the fact that a judge is friend with a witness does not ordinarily warrant an inference that the judge would be predisposed to credit that witness' testimony. Consequently, when a disqualification motion alleges no more than friendship between a judge and a witness, the court will usually deny the motion.[101]

Even a judge's friendship with a nominal litigant or a lawyer—the latter of which is certainly more problematic than friendship with a witness—does not by itself require the judge to recuse himself. "Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer,"[102] let alone a mere witness. The Tenth Circuit's opinion in *David v. City and County of Denver*[103] illustrates the point. In that case, the judge was presiding in a civil rights case against a police chief and a number of police officers.[104] The judge had previously represented the chief some twenty years before and the judge also knew several of the law enforcement

---

[101]  Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 8.2 (2d ed. 2007). Flamm's treatise has been relied upon at least twice by the Delaware Supreme Court. *See Del. Transit Corp. v. Amalgamated Transit Union Local 842,* 34 A.3d 1064, 1071 (Del. 2011); *Capano v. State,* 781 A.2d 556, 640 (Del. 2001).
[102]  *United States v. Murphy,* 768 F.2d 1518, 36 (7th Cir. 1985).
[103]  101 F.3d 1344 (10th Cir.1996).
[104]   *Id.* at 1348-50.

witnesses in the case before him.[105]   Further, the judge had recently

spoken to some of them, including the police chief, in connection with an

investigation of the murder of the judge's son.[106] The judge declined to

recuse himself.[107]   In affirming his decision, the Court of Appeals wrote:

> Although the test in this circuit is one of reasonableness, it is reasonableness tempered with a knowledge of the relevant facts. It is hardly possible for a judge with criminal jurisdiction to have no knowledge of some personnel in law enforcement. We must examine the judge's discretionary decision not to recuse both in light of the judge's duty to decide cases fairly and his duty to avoid impropriety, determined from an informed, reasonable viewpoint. There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is. Our review of these matters leads us to conclude that the trial judge did not abuse his discretion in denying [the motion for disqualification].[108]

If the judge under these circumstances did not abuse his discretion in

refusing to recuse himself where the acquaintance/former client was a

*party,* it goes without saying that my relationship with Captain Browne--

who is merely a *witness* with no stake in the outcome of this case--does

not require me to recuse myself.  As the Sixth Circuit put it, "it would not

be an abuse of discretion to decline to recuse when friends are merely

---

[105]   *Id.* at 1350.
[106]   *Id.*
[107]   *Id.*
[108]   *Id.* at 1351 (internal emphasis, citation, and questions omitted).

witnesses instead of the target of the lawsuit."[109] Jurists at the opposite end of the judicial hierarchy from me have not recused themselves because of friendship with a participant. Justice Scalia once wrote when declining to recuse himself:

> [W]hile friendship is a ground for recusal of a Justice where the personal fortune or the personal freedom of the friend is at issue, it has traditionally *not* been a ground for recusal where *official action* is at issue.[110]

The State has not cited any authority holding that a judge should recuse himself simply because he is friend of a witness who has no stake in the outcome of the litigation. It attempts to fill that void by substituting unsupported anecdotal statements from the two Deputy Attorneys General who authored the State's motion. Its motion recites that the "experience of the undersigned prosecutors" is that it is the common practice of Delaware trial judges to recuse themselves when it is likely the judge has had "more than an incidental professional or personal relationship" with an important witness. Courts do not accept the unsupported opinions of lawyers as legal authority, and this case is a good illustration of why. At oral argument one of the "undersigned prosecutors" admitted he had tried only four cases to verdict in this court and, contrary to what he stated in the motion, he was unaware of a single instance in which a judge recused because of a friendship with a witness. The other "undersigned prosecutor" had considerably more

---

[109]   *Lawrence v. Bloomfield Twp.*, 313 F. A'ppx. 743, 79 (6th Cir. 2008).
[110]   *Cheney*, 541 U.S. at 916 (emphasis in original).

experience, but he could not name any judge who had recused himself because of friendship with a witness, neither could he recall anything about when this last occurred or even how often it had occurred.[111]

In its motion the State argued, again without supporting legal authority, that I should recuse myself because I might be required to rule on evidentiary objections during Captain Browne's testimony.[112] According to the State, "depending on how it goes" one side or the other may be required to "impeach his ability to accurately recount the events of his 1991 investigation."[113] It continues that because of this I might be called upon "to make rulings that directly involve a former client."[114] It is difficult to understand why Captain Browne's testimony would be impeached, given that neither side disputed that testimony during the Rule 61 proceedings. An informed reasonable observer would realize that a witness who has no stake in litigation would care not one whit about evidentiary rulings made during his testimony and therefore would realize that his participation would not influence my evidentiary rulings. Finally, I note that the Delaware Supreme Court has already dispensed with the State's argument. In *Jackson v. State,* it opined:

> It is part of a trial judge's normal role to rule upon the admissibility of contested evidence. In the event a judge declares certain evidence to be inadmissable, the judge is expected to exclude

---

[111] Tr. at 23-25.
[112] The State seems to have abandoned this contention during oral argument, but I have addressed it out of caution.
[113] State's Mot. for Recusal, ¶ 16.
[114] *Id.* ¶ 17

that evidence as a factor in any further decision making process. To require a judge to disqualify himself or herself from further participation in a case where the judge acts as a gatekeeper for the admissibility of evidence would impose an unreasonable and totally impracticable standard. A conscientious application of the subjective test by a judge faced with a recusal motion based on exposure to inadmissible evidence in the same proceeding will, in most cases, provide sufficient protection from bias.[115]

Another reason why my recusal is not called for here is that I will not be called upon to make any judgments about Captain Browne's credibility.[116] The State conjured the possibility that, even though I will not be the trier of fact at Wright's second trial, I might still be called upon to pass judgment on Captain Browne's credibility. Its theory goes this way:

- If Wright is again convicted of first degree murder, and

- If the State can develop evidence that Wright was in fact the perpetrator of the BVLS attempted robbery, and

- The State would offer that evidence at the penalty hearing as an aggravating circumstance, and

- I would have to weigh the any newly discovered evidence of Wright's involvement in the BVLS attempted robbery

---

[115]   684 A.2d 745, 753 (Del. 1994).
[116]   It should be recalled here that his testimony was undisputed at the Rule 61 hearing and the State has yet to proffer a reason why it will be disputed at trial. Even in the unlikely event his credibility becomes an issue at trial it will be the jury, not me, which will make that judgment

against Captain Browne's conclusion that Wright was not the perpetrator of the BVLS crime, then

- I would have to make a judgment about Captain Browne's credibility.

The route to the State's conclusion is tenuous and the destination is remote. It is tenuous because it hinges on the premise that the State can discover evidence that Wright was a perpetrator of the BVLS attempted robbery. The State tried and was unable to develop such evidence 22 years ago when Wright was first tried. There is scant likelihood it will be able to do so now.[117]

The remoteness of the possibility I would have to make a judgment about Captain Browne's credibility argues against recusal. It is settled that a "judge should not recuse on unsupported, irrational, speculative, or highly tenuous grounds. A judge must hear a case unless some reasonable factual basis to doubt the impartiality of the tribunal is shown by some kind of probative evidence."[118] A New York federal court made an observation which is especially pertinent here:

> [W]hen deciding a recusal motion, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. ***Recusal is not warranted for reasons that are remote, contingent,***

---

[117]   At oral argument the State indicated it is having trouble re-locating witnesses who testified in this case. There is little reason to believe it will be able to find previously unknown witnesses relating to the BVLS crime.

[118]   James Wm. Moore et al., Moore's Federal Practice § 63.60[1][b], at 62-63 (3d ed. 1999).

> *or speculative and a trial judge should not recuse himself on unsupported, irrational, or highly tenuous speculation lest the price of maintaining the appearance of justice be the power of litigants or third parties to exercise a veto over the assignment of judges. The pertinence of these considerations is heightened when a disqualification motion is made in a litigation that is not new, but has advanced considerably before the judge in question.*[119]

In the same vein the Third Circuit wrote this year that "recusal is not required on the basis of unsupported, irrational, or highly tenuous speculation."[120]

In sum, the State asks me to recuse myself because I once had a professional relationship and friendship with a witness who has no stake in the outcome of this case. It does so even though I will not be called upon to make any judgment about Captain Browne's credibility. This case is for all intents and purposes the same as *United States v. Dandy* wherein the United States Court of Appeals held:

> In this case, Judge Cleland was not called upon to evaluate the credibility of Mowat [a witness acquainted with the judge] because defendant Dandy was tried by a jury. Furthermore, Mowat was simply one of many government witnesses and did not have a personal stake in the outcome which might have influenced Judge Cleland.[121]

---

[119] *Busch v. City of New York*, 2005 WL 2219309, at *7 (E.D.N.Y. 2005) (emphasis added) (alterations omitted).
[120] *In re Filbert*, 578 F. A'ppx., 79, 81 (3d Cir. 2014) (internal quotations omitted).
[121] 998 F.2d 1344, 1349-50 (6th Cir. 1993).

### g. Judge shopping

The lack of merit to the State's argument suggests the possibility that Captain Browne's testimony has little, if anything, to do with why the State wishes me to recuse myself. It is more than ironic that the State was content for me to preside over this case during a hearing in which I was called upon to make judgments about the credibility of the witnesses, but now the State objects to my presiding over a trial in which I will not be called upon to assess credibility. The State concedes that no new facts have arisen which have caused its change of heart. What has occurred is that I granted Wright relief. An informed observer could therefore easily conclude that the State is motivated by the fact that I have ruled against it on crucial issues; in other words, it is judge shopping. This weighs heavily against allowing the State to withdraw its waiver:

> [A] litigant who is aware of a potential ground for recusal should not be permitted to 'sandbag' that ground, hoping for a satisfactory resolution, but retaining a ground of attack on the judge's rulings. The concern, in a word, is judge-shopping.[122]

### II. The reasons why I may not recuse myself.

In light of the lack of merit to the State's motion, there is a temptation at this point in the opinion to declare myself unbiased and then recuse myself. I cannot do this. Harkening once again to the words

---

[122] *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 976 F.Supp. 84, 87 (D.Mass.1997) (quoting *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F.3d 136, 141 n.6 (1st Cir. 1994)).

of Justice Scalia, "[i]f I could have done so in good conscience, I would have been pleased to demonstrate my integrity, and immediately silence the criticism, by getting off the case. Since I believe there is no basis for recusal, I cannot."[123]

Time and again the courts of this state and elsewhere have emphasized the obligation of a judge to refuse unwarranted requests for recusal. The Court of Chancery succinctly stated the principle:

> The decision to recuse or disqualify must not be made lightly, because to do so is contrary to the Delaware Judges' Code of Judicial Conduct and inevitably leaves the case as one of the recused or disqualified judge's colleague's problems to deal with, thereby invariably impinging on his or her ability to address the many other matters already pending on his or her docket.[124]

In *Desmond v. State* Resident Judge Cooch explored in detail the history of this so-called "duty to sit" and how that duty interrelates with the other duties of judges who are faced with a motion to recuse.[125] I will not gild the lily by repeating his work. For present purposes it is sufficient to note his conclusion:

> There remains an inherent "duty to sit" that is integral to the role of a judge. Under this approach, "[a] judge has as strong a duty to sit when there is no legitimate reason to recuse as he or she does to recuse when the law and facts require." In short, a judge's duty to recuse or disqualify is complementary to, but not greater than, his or her baseline duty not to recuse in

---

[123]  *Cheney*, 541 U.S. at 929.
[124]  *Reeder*, 2006 WL 510067, at *23.
[125]  *Desmond*, 2011 WL 91984, at *8-9.

the absence of any objective basis. This principle continues to apply in Delaware.[126]

Our Supreme Court has expressed the same view about the burden caused by recusals:

> While we find no abuse of discretion in the refusal to recuse in this case, we note that there is a compelling policy reason for a judge not to disqualify himself at the behest of a party who initiates litigation against a judge. In the absence of genuine bias, a litigant should not be permitted to "judge shop" through the disqualification process. The orderly administration of justice would be severely hampered by permitting a party to obtain disqualification of a judge through the expedient of filing suit against him.[127]

This case perhaps stands as a paradigm of the needless waste of judicial resources resulting from an unnecessary recusal. It dates back to 1991, and was procedurally complex long before I issued *Wright-2012.* Since then the case has grown in complexity. The docket sheet itself is almost 90 pages long. It is not the procedural complexity alone which will deplete judicial resources if I unnecessarily recuse myself. The record in this matter is immense, consisting of more than 500 docket entries, which includes thousands of pages of transcripts, motions, briefs and opinions. One might think that a new judge need not be familiar with the previous record when presiding over Wright's second trial, but the reality is that it will be essential for the judge to be intimately familiar

---

[126] *Id.* at *9.
[127] *Los,* 595 A.2d at 385.

with it. Both the State and Wright's counsel have indicated that there will be a considerable motion practice before trial. In the State's view, many of the defenses which might otherwise be available to Wright are procedurally barred in his second trial because of events occurring over the course of the 23 years since Wright was indicted. Although it remains to be seen which prior rulings may, or may not be revisited, it is inevitable that knowledge of the prior record will be required. Recusal would require a new judge to spend literally hundreds of hours coming up to speed on that voluminous and complex history.

There is a second policy reason why recusal is inappropriate here. The Department of Justice is, of course, the branch of government charged by our state constitution with responsibility for the prosecution of alleged crimes. It is therefore vital that the public perceive that the courts are independent of that agency. From our nation's very beginning an independent judiciary has been an essential part of our national fabric. Indeed, one of King George's "Injuries and Usurpations" set forth in the Declaration of Independence was "He has made judges dependent on his Will alone."[128] This principle is no less important today than it was 238 years ago. The Delaware Judges' Code of Judicial Conduct, which as the name implies governs the conduct of Delaware Judges, states as a basic tenant that "[a]n independent and honorable judiciary is

---

[128] The Declaration of Independence para. 10 (U.S. 1776).

52

indispensible to justice in our society."[129]  To this end the Code of Judicial Conduct "is to be construed so as to not impinge on the essential independence of judges in making decisions."[130] The Code requires that judges "be unswayed by fear of criticism."[131]  A judge may therefore not use "disqualification to avoid cases that present difficult, controversial or unpopular issues."[132]

The independence of the courts would be subject to serious and legitimate questions if judges were to recuse themselves whenever faced with a non-meritorious recusal request. This would create the specter that "the price of avoiding any hint of impropriety, no matter how evanescent, would grant litigants the power to veto the assignment of judges."[133] Judges must avoid creating the perception that a litigant can manipulate the judiciary simply by filing a frivolous motion for recusal. "Granting Plaintiff's Recusal Motion under these circumstances would not only be wrong, but it would also undermine public confidence in the judiciary, for the judiciary would appear easily manipulated by any litigant who is prepared to claim that a court is biased, no matter how speculative and fanciful the allegations."[134]  The need to avoid creating such a perception is particularly acute when the meritless request for recusal is made by the branch of government charged with prosecuting

---

[129]    Del. Judges' Code of Judicial Conduct Rule 1.2(B).
[130]    *Id.* Preamble.
[131]    *Id.* Rule 2.4 (A).
[132]    *Id.*  Rule 2.8.
[133]    *In re Drexel Burnham Lambert Inc.***,** 861 F.2d at 1315.
[134]    *McCann v. Communications Design Corp.* 775 F.Supp. 1506, 1533 (D.Conn.1991).

crimes. The appearance that a judge could be intimidated by such a request for recusal would be disastrous to the public's perception of the independence of the judiciary and the fairness of our criminal justice system. A judge is therefore obliged not to recuse himself under such circumstances:

> A judge must "carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning her impartiality might be seeking to avoid the adverse consequences of her presiding over their case. Indeed, the public interest mandates that judges not be intimidated out of an abundance of caution into granting disqualification motions: A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may create the appearance of bias, and a timid judge, like a biased judge, is intrinsically a lawless judge.[135]

Despite my reference to the Declaration of Independence, I do not view this matter as some sort of intra-governmental clash of historic dimension. Far from it. Still, it is impossible to fathom how my recusal in the face of this motion would not seriously erode the confidence of an informed observer in the independence of the judiciary.

I wish to conclude this opinion with a word about the two attorneys who filed the motion for recusal. I believe it is fair to say that this case is one of high profile and has generated at least some public

---

[135] *United States v. Hammond*, 2013 WL 637007, at *4 (S.D.N.Y. Feb. 21, 2013 )(alterations and internal quotations omitted).

interest.  Moreover, the friends and loved-ones of Philip Seifert, who was ruthlessly murdered that cold January night, are entitled to know why I will continue to sit on this case.  I have therefore described the flaws in the moving party's request in more detail than I might have otherwise have set out.  Unfortunately, this might be viewed by the uninformed as a criticism of the Department of Justice and the Deputy Attorneys General who authored the motion or as personal pique on my part.  This opinion was never intended as such.  Twenty years ago I had the privilege of authoring a chapter on the history of the Department of Justice which was included in <u>The Delaware Bar in the Twentieth Century</u>.  In that chapter I wrote

> As the century draws to a close . . .increasingly sophisticated legal considerations have become intertwined in virtually every facet of day-to-day activities of state government.  Our state has been fortunate to have had the services of attorneys general and the men and women who served under them, whose skill, dedication, willingness to sacrifice and plain hard work have made Delaware a better place.[136]

In my six years on the bench I have developed even more respect for the Department's attorneys and its leaders.  This holds true for the attorneys who filed the instant motion.

---

[136] *The Delaware Bar in the Twentieth Century*, at 187-88 (The Delaware State Bar Association 1994).

For the foregoing reasons, the motion for recusal is **DENIED.**

_____
John A. Parkins, Jr.

Dated: December 16, 2014